NATIONAL COMMODITY AND BARTER ASSOCIATION, NATIONAL COMMODITY EXCHANGE; Members & Subscribers of the National Commodity & Barter Association/National Commodity Exchange; John Voss; Mitchell Beals, individually and as representative of the National Commodity & Barter Association/National Commodity Exchange; John S. Pleasant, Plaintiffs–Appellants,

v.

Lawrence B. GIBBS, Individually and as Commissioner of the Internal Revenue Service; et al., Defendants–Appellees.

No. 88–1470.

United States Court of Appeals, Tenth Circuit.

Sept. 25, 1989.

William A. Cohan (Jennifer A. Greene, Cohan & Greene, Denver, Colo. and John S. Pleasant, pro se, with him on the brief), of Cohan & Greene, Denver, Colo., for plaintiffs-appellants.

Ann Belanger Durney, Atty. (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Regina S. Moriarty, Attys., Tax Div., Dept. of Justice, Washington, D.C. and Michael J. Norton, U.S. Atty., Denver, Colo., of counsel, with her on the brief), Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before LOGAN, BRORBY and EBEL, Circuit Judges.

PER CURIAM.

The National Commodity and Barter Association, the National Commodity Exchange, and certain individual members of these organizations (collectively referred to as the NCBA) instituted this action in federal court, naming several federal agencies and numerous federal employees as defendants. The NCBA alleged direct violations of its first, fourth, and fifth amendment rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). It additionally claimed that the defendants had engaged in a conspiracy and pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, 1962 (1982 & Supp. IV 1986), by their continued, unwarranted investigation and harassment of the organization pursuant to the IRS' "Illegal Tax Protester Project" and by their collection of unlawful penalties under the Internal Revenue Code. It requested injunctive relief and damages for these alleged violations. In addition, the NCBA requested the district court declare unconstitutional the statute authorizing the collection of the above penalties, 26 U.S.C. § 6700(a) (1982 & Supp. IV 1986).

The defendants thereafter moved for dismissal of the complaint under Fed.R.Civ.P. 12(b)(6). After a hearing on the motion, the district court ruled for the defendants, issuing its findings orally from the bench. The court held that the plaintiffs' cause of action against the defendants in their official capacities was barred by the doctrine of sovereign immunity and that there had been no waiver of that immunity under the Federal Tort Claims Act. It further held that the NCBA's damages claim against the defendants in their individual capacities was barred by the doctrine of qualified immunity and that its claim for injunctive relief was precluded by the Anti–Injunction Act, 26 U.S.C. § 7421 (1982). Finally, the court ruled that the NCBA had not overcome the presumption that 26 U.S.C. § 6700 was constitutional. The NCBA now appeals to this court, and we affirm in part, reverse in part, and remand to the district court for additional proceedings.

## I. *Procedural Matters*

The dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) presents a

question of law which we review *de novo*, and we apply the same standard as did the district court below. *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986). Under this rule, the dismissal of a complaint is proper if, taking all well-pleaded facts as true and construing them in the light most favorable to the plaintiff, it is clear that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Grider v. Texas Oil & Gas Co.*, 868 F.2d 1147, 1148 (10th Cir. 1989). We conclude that, except for the NCBA's *Bivens* claims for violations of the first and fourth amendments, dismissal of the complaint under Rule 12(b)(6) was appropriate in this case.

■ At the outset, we note that the NCBA's second amended complaint consists of some thirty-five single-spaced pages, over twenty-five of which are comprised of "general allegations" describing events spanning a period of approximately eight years. These allegations catalogue various policies and activities which the NCBA characterizes as designed to "demoralize, paralyze, and ultimately destroy a noncommercial, voluntary, political/educational association of individuals advocating dissident views as to the tax, monetary and fiscal law and policies of the government." Many of the allegations purport to detail these activities by listing the particular federal agents involved in them; however, there is little identification, if any, of the persons targeted by these activities, the specific dates of the events, or the particular property seized.

In addition, the narrative indicates that, in a number of instances, the NCBA has already commenced, if not pursued successfully, actions challenging many of the above events.[1] The complaint does not indicate how the claims raised in this case are distinguishable from those raised in earlier actions; indeed, it would appear that the prior resolution of several issues, particularly with respect to the jeopardy

assessments challenged herein, would preclude their relitigation in this forum. It is likewise nearly impossible to discern how the fifty-seven general allegations in the complaint can be structured to support the required elements of each of the six separate claims for relief in this case, and the NCBA's briefs on appeal do little to resolve this dilemma.

■ In sum, this complaint does not present a "short and plain" statement of the claims raised by the NCBA, as required by Fed.R.Civ.P. 8(a). Nor do the NCBA's briefs in this appeal meet the requirement of Fed.R.App.P. 28 to demonstrate to this court the basis for the alleged error. While we have a duty to determine in a Rule 12(b)(6) motion whether the complaint states a conceivable cause of action, we are not required to manufacture a party's argument on appeal when it has failed in its burden to draw our attention to the error below. *See United States v. Swingler*, 758 F.2d 477, 493 (10th Cir.1985); *cf.* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice*, ¶ 228.02[4] at 28–10 to –11 (2d ed. 1989). Despite the vague, disorganized, and rambling nature of the complaint, however, it is possible to conclude that a number of the NCBA's claims must be dismissed. As to those remaining claims, we remand to the district court with directions to permit an amended complaint which outlines in clear, direct and understandable terms the precise factual allegations to support each essential element of these claims.

■ We additionally note that the complaint identifies as plaintiffs not only the NCBA and several named individuals, but also the "members & subscribers of the National Commodity & Barter Association/National Commodity Exchange." In detailing the allegations against the defendants, the complaint does not further specify the names of the individual members of the NCBA whose rights were allegedly vio-

---

1. In this circuit alone, see, for example, *Pleasant v. Lovell*, 876 F.2d 787 (10th Cir.1989); *Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir.1987); *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir.1985); *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115 (10th Cir.1983); *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611 (10th Cir.1983); *National Commodity & Barter Ass'n v. United States*, 625 F.Supp. 920 (D.Colo.1986).

lated, and counsel for the NCBA stated during oral argument that this was to protect the anonymity and first amendment freedom of association of these individuals allegedly recognized by this court in *In re First National Bank of Englewood, Colo.*, 701 F.2d 115 (10th Cir.1983).[2]

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint, the title of the action shall include the names of all the parties...." The Federal Rules thus make no provision for suits by persons using fictitious names or for anonymous plaintiffs. *Coe v. United States Dist. Court*, 676 F.2d 411, 415 (10th Cir.1982). In certain limited circumstances, however, courts have permitted a plaintiff to proceed using a fictitious name where there are significant privacy interests or threats of physical harm implicated by the disclosure of the plaintiff's name. *See, e.g., id.* at 415–17 (collecting cases); *Doe v. Stegall*, 653 F.2d 180 (5th Cir.1981); *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988). This procedure has not been permitted when only the plaintiff's economic or professional concerns are involved, *see, e.g., Coe*, 676 F.2d at 417; *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir.1979); *Free Market Compensation v. Commodity Exchange, Inc.*, 98 F.R.D. 311

(S.D.N.Y.1983), or when there is the threat of criminal or civil prosecution, *see, e.g., Doe v. Rostker*, 89 F.R.D. 158, 161–62 (N.D.Cal.1981).

In this case, the unnamed plaintiffs have made no request to the district court for permission to proceed anonymously, nor have they otherwise disclosed their identities to the court or to the defendants. Absent permission by the district court to proceed anonymously, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.[3] *See Doe v. Stegall*, 653 F.2d at 183; *Doe v. United States Dept. of Justice*, 93 F.R.D. 483, 484 (D.Colo.1982). We therefore dismiss the complaint as to the unnamed members of the NCBA, and consider the remainder of the claims in this appeal solely with respect to NCBA as an associational entity.[4]

## II. *Sovereign Immunity*

NCBA has raised a number of claims against each of the defendants in their official capacities as officers or employees of the federal government. Addressing these claims, the district court correctly noted that they are barred by the doctrine of sovereign immunity. It is well-settled that the United States retains its

---

**2.** The NCBA's reliance on *In re First National Bank* is misplaced. In that case, this court held that the NCBA and certain named individuals had standing to challenge the federal government's seizure of certain bank records of the accounts of the NCBA, some of which identified individual members of the NCBA, 701 F.2d at 117–18, and that these parties had made a sufficient showing of a potential first amendment violation to warrant an evidentiary hearing whether the government's interest in seizing these documents was sufficient to overcome the parties' first amendment associational rights, *id.* at 118–19. The issue of whether members of the NCBA could bring a civil action in an anonymous capacity was not raised or considered. Moreover, unlike *In re First National Bank*, the parties in this case seek to invoke the power of the federal court in an action raising serious claims and requesting substantial damages against the defendants, yet they desire to remain

anonymous not only to the general public but to the defendants as well. To permit this case to progress in this manner would deny the defendants any ability to defend against the claims against them, as it is virtually impossible to determine the precise activities of which the plaintiffs complain.

**3.** Although the defendants did not raise this issue in their brief, it is jurisdictional and the court may consider it sua sponte. *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989).

**4.** We likewise dismiss the complaint as those individual members of the NCBA who were specifically named—John Voss, Mitchell Beals, and John Pleasants—since the complaint is devoid of any direct allegations of unlawful acts against the property or rights of these persons.

sovereign immunity from suit unless it has expressly waived such immunity and that the application of this doctrine cannot be avoided simply by naming agencies of the federal government or their individual officers and employees. *See Atkinson v. O'Neill,* 867 F.2d 589, 590 (10th Cir.1989). The NCBA attempts to avoid this bar by arguing that sovereign immunity has been waived by virtue of the NCBA's compliance with the jurisdictional requirements of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80 (1982). We disagree.

■ While the FTCA contains a limited waiver of the federal government's sovereign immunity, it expressly excludes from its coverage "any claim arising in respect of the assessment or collection of any tax...." 28 U.S.C. § 2680(c). The NCBA argues that the actions of the defendants alleged to be illegal in this case do not arise out of the assessment or collection of a tax. However, the central theme of the NCBA's complaint relates to the defendants' assessment of penalties for the promotion of an abusive tax shelter, activities which clearly relate to the federal government's tax assessment and collection functions. We therefore conclude that the NCBA's complaint is governed by the § 2680(c) exception to the FTCA's waiver of sovereign immunity. *See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,* 845 F.2d 113, 115–16 (6th Cir.1988) (IRS agents' actions in denying organization tax exempt status held to be within the exemption for conduct connected with the assessment or collection of taxes); *Capozzoli v. Tracey,* 663 F.2d

654, 657–58 (5th Cir.1981) ("Congress intended to insulate the IRS from tort liability stemming from *any* of its revenue-raising activities," including the taking of photographs alleged to be a tortious invasion of privacy); *Morris v. United States,* 521 F.2d 872, 874 (9th Cir.1975) (IRS agents' actions in informing creditors of taxpayer's purported tax liability leading them to deny the taxpayer further credit fell squarely within the § 2680(c) exception).[5]

■ The NCBA also attempts to avoid the bar of sovereign immunity by arguing that 28 U.S.C. § 2410(a) (1982) affords it a remedy against the defendants' actions in this case. This section waives the United States' sovereign immunity in a civil action to quiet title, foreclose a mortgage or lien, partition, condemn, or interplead with respect to property upon which the United States has or claims a lien. *Id.* Again, a fair reading of the complaint indicates that this is an action for damages and injunctive relief based on constitutional and RICO claims relating to the alleged improprieties of federal agents in their assessment and collection of penalties against the NCBA, despite the NCBA's attempt on appeal to color it as a quiet title action under § 2410. In addition, because the NCBA clearly seeks to attack the validity of the underlying penalty assessments, *Laino v. United States,* 633 F.2d 626, 633 n. 8 (2d Cir.1980), and seeks monetary damages, *Ringer v. Basile,* 645 F.Supp. 1517, 1526 (D.Colo.1986), we cannot construe this as a quiet title action under § 2410.[6] Thus,

---

**5.** The NCBA argues, however, that the § 2680(c) exception is inapplicable in this case because it has alleged that the tax assessments in question were not made according to statutory procedures requiring notice and demand. We disagree. A similar argument was raised in *Murray v. United States,* 686 F.2d 1320 (8th Cir. 1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983), in which the court rejected the plaintiff's contention that a waiver of sovereign immunity must be implied when it is alleged that the IRS has failed to comply with its own procedures. We concur with the court's reasoning that "a waiver of immunity 'cannot be implied but must be unequivocally expressed,'" *id.* at 1325 (citation omitted), especially when it appears that existing tax appeal procedures are

adequate to address its concerns with respect to the collection of the penalties in this case.

**6.** While it is true that § 2410 provides jurisdiction for challenges to federal tax liens when procedural irregularities are alleged, the NCBA's allegations to this effect are without merit. The NCBA alleges that the defendants violated IRS procedures by filing liens and executing a levy by collection before giving the NCBA the required notice and demand under 26 U.S.C. §§ 6321, 6331(a). However, § 6331(d)(3) permits the IRS to proceed immediately with the collection of a jeopardy assessment without the required notice and demand. A taxpayer seeking administrative review of the jeopardy assessment may then proceed under § 7429 if he feels that the assessment was in error.

lacking a waiver of sovereign immunity under either the FTCA or § 2410, the NCBA cannot maintain its claims against the defendants in their official capacities.

## III. *Bivens Claims*

Although we have concluded that the claims against the defendants in their official capacities are barred by the doctrine of sovereign immunity, the claims against the defendants in their individual capacities are not. *See Davis v. Passman,* 442 U.S. 228, 245–48, 99 S.Ct. 2264, 2277–79, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Named Agents,* 403 U.S. at 395–97, 91 S.Ct. at 2004–05; *Pleasant v. Lovell,* 876 F.2d 787 (10th Cir.1989). With respect to these claims, the district court ruled that they were barred by the doctrine of qualified immunity, as the defendants were simply carrying out their jobs and had not violated any clearly established laws in doing so. While we agree with the district court's reasoning that the defendants were entitled to qualified immunity as to the plaintiffs' *Bivens* claims, we do not reach this issue. Rather, we first address whether the NCBA is entitled to raise a *Bivens* claim in the first instance.

In *Schweiker v. Chilicky,* — U.S. —, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court outlined the considerations involved in determining whether a *Bivens* claim should be recognized. It noted the admonition, following from *Bivens,* that a court-created damages remedy may not be appropriate when "special factors counsel[ ] hesitation":

> Our more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts. The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation. Thus, in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), we refused—unanimously—to create a *Bivens* action for enlisted military personnel who alleged that they had been injured by the uncon-

stitutional actions of their superior officers and who had no remedy against the Government itself....

> Similarly, we refused—again unanimously—to create a *Bivens* remedy for a First Amendment violation "aris[ing] out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983). In that case, a federal employee was demoted, allegedly in violation of the First Amendment, for making public statements critical of the agency for which he worked. He was reinstated through the administrative process, with retroactive seniority and full backpay, but he was not permitted to recover for any loss due to emotional distress or mental anguish, or for attorney's fees....

> In sum, the concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* 108 S.Ct. at 2467–68.

The Court then noted that the social security system in *Chilicky,* like the military justice system in *Chappell v. Wallace* and the civil service system in *Bush v. Lucas,* contains elaborate mechanisms for the resolution of claims, and that Congress had given frequent attention to problems arising under the system. *Chilicky,* 108 S.Ct. at 2468–69. It therefore declined to create a *Bivens* remedy, notwithstanding that the social security system makes no provision for the award of monetary damages for the constitutional violations at issue, concluding that " 'Congress is in a better position to decide whether or not the public interest would be served by creating [a *Bivens* rem-

edy].' " *Id.* at 2469 (quoting *Bush*, 462 U.S. at 390, 103 S.Ct. at 2417).

■ The same considerations which led the Supreme Court in *Chilicky* to conclude that the recognition of a *Bivens* claim would be inappropriate are applicable here with respect to the NCBA's allegations of violations of the fifth amendment due process clause and of various provisions of the Internal Revenue Code.[7] Although there may be no established mechanism for the recovery of damages against federal authorities for unconstitutional conduct, the unavailability of complete relief does not mandate the creation of a *Bivens* remedy when other "meaningful safeguards or remedies for the rights of persons situated as [were the plaintiffs]" are available. *Chilicky*, 108 S.Ct. at 2468. In this case, the NCBA has recourse to challenge the legality of the penalty assessments under several provisions of the Internal Revenue Code. Section 6703 of the Code sets forth the procedures by which a taxpayer may obtain review of the assessment of a penalty under § 6700 relating to the promotion of an abusive tax shelter. If such penalties are collected by virtue of a jeopardy assessment, as authorized under § 6671 and § 6862 of the Code, then the assessment procedures may be challenged pursuant to § 7429 of the Code. This plainly illustrates that the NCBA has "all sorts of rights against an overzealous officialdom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [the defendants]." *Cameron v. Internal Revenue Serv.*, 773 F.2d 126, 129 (7th Cir. 1985); *see also Baddour, Inc. v. United States*, 802 F.2d 801, 808 (5th Cir.1986);

*Felak v. United States*, 677 F.Supp. 606, 607–08 (D.Minn.1988). We therefore conclude that it would be inappropriate to recognize a *Bivens* remedy with respect to the NCBA's claims that the defendants violated the fifth amendment and various provisions of the Internal Revenue Code.

■ The NCBA also raises first and fourth amendment *Bivens* claims. In *Pleasant v. Lovell*, without directly considering the issue, this court permitted individuals to proceed in first and fourth amendment *Bivens* claims against agents of the Internal Revenue Service for certain activities also described in the complaint at issue in this case. *See* 876 F.2d at 793–806. Implicit in our holding in *Pleasant* is the recognition that, while the comprehensive scheme of the Internal Revenue Code should not be indiscriminately disrupted by the creation of new remedies, certain values, such as those protected by the first and fourth amendments, may be superior to the need to protect the integrity of the internal revenue system. We therefore recognize that the NCBA may bring a *Bivens* action for violations of the first and fourth amendments. However, due to the obtuse language of much of the complaint, we are unable to discern the precise factual basis for each of these claims. We therefore remand to the district court with directions that the court permit the NCBA to file an amended complaint which clearly outlines the basis for each of these claims, consistent with our discussion in Section I above.

In addition, since we have dismissed the complaint as to all parties except the NCBA, it is imperative that the amended complaint clearly indicate the property held by the NCBA as an entity which has been subject to the allegedly illegal searches and

---

7. In a conclusory way, the NCBA also attempts to set forth an equal protection claim under the fifth amendment. Assuming this to be essentially a selective prosecution claim, we are unable to locate even the barest reference to the essential facts necessary to support such a claim. *See C.E. Carlson v. SEC*, 859 F.2d 1429, 1437 (10th Cir.1988) (plaintiff must show that others similarly situated and committing same acts have not been prosecuted); *Taylor v. United States*,

798 F.2d 271, 274 (7th Cir.1986) (same), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 983 (1987); *United States v. Amon*, 669 F.2d 1351, 1356 n. 1 (10th Cir.1981) (same), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1980); *United States v. Moss*, 604 F.2d 569, 572–73 (8th Cir.1979) (same), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1982). It is therefore dismissed.

seizures. The NCBA can sue only with respect to its own property or rights allegedly infringed by identifiable defendants. If the district court determines that the NCBA has set forth sufficient facts to state a claim under the first and fourth amendments, it should then reconsider whether the defendants are entitled to the defense of qualified immunity.

### IV. *Remaining Claims*

■ In addition to its *Bivens* claims against the individual defendants, the NCBA has alleged RICO violations and has requested declaratory and injunctive relief. We are unable to discern the basis of the NCBA's RICO claim from the complaint, the NCBA has made no attempt to further define this claim in this appeal, and it has not provided any authority that such a claim will lie against a group of federal officials on account of their misconduct. Thus, we affirm its dismissal. *See Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368, 371 (10th Cir.1989) (court need not do appellant's work by "connect[ing] assertions with elements of all sections of the RICO law.").

■ As to the NCBA's argument that it is entitled to injunctive relief, the Anti-Injunction Act, with limited exceptions, precludes any "suit for the purpose of restraining the assessment or collection of any tax … by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The NCBA seeks to avoid this restriction on the court's jurisdiction by asserting that a judicially created exception to this statute applies. This exception allows a taxpayer to obtain an injunction if "(1) the government cannot prevail under any set of circumstances, and (2) irreparable injury would otherwise occur." *National Commodity & Barter Ass'n v. United States,* 625 F.Supp. 920, 921 (D.Colo.1986) (citing *Enochs v. Williams Packing and Navigation Co.,* 370 U.S. 1, 6–8, 82 S.Ct. 1125, 1128–30, 8 L.Ed.2d 292 *reh'g denied,* 370 U.S. 965, 82 S.Ct. 1579, 8 L.Ed.2d 833 (1962)). The NCBA has previously attempted to obtain injunctive relief

under this exception with respect to the same penalties at issue in this case, and such relief was denied. *See id.* at 921–24. It is therefore precluded from relitigating this question in this forum.

Finally, the NCBA requests this court to declare unconstitutional the Internal Revenue Code provision authorizing the assessment of the above penalties for the promotion of an abusive tax shelter, 26 U.S.C. § 6700. Apart from our inability to discern any basis for this argument from the complaint or the NCBA's briefs, we note that other courts have upheld the constitutionality of similar penalty statutes based on the appeal procedures provided by § 6703, a conclusion we would be inclined to reach with respect to § 6700 had the NCBA adequately presented this issue on appeal. *See, e.g., Nelson v. United States,* 796 F.2d 164, 167 (6th Cir.1986); *Jolly v. United States,* 764 F.2d 642, 645–47 (9th Cir.1985).

The judgment of the United States District Court for the District of Colorado is AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.