972 F.2d 356
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 John E. CARLSON and Linda D. Carlson,
Plaintiffs-Appellees/Cross-Appellants,
v.
BAGLEY SECURITIES, INC., a Utah corporation,
Defendant-Appellant/Cross-Appellee,
and
Edward Dallin Bagley; Edward Bryan Bagley; Lisa Bagley;
Carolyn Creamer Bagley, Defendants.
 Nos. 91-4104, 91-4109.
 United States Court of Appeals, Tenth Circuit.
 July 28, 1992.
 
 Before JOHN A. MOORE, BARRETT and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Defendant Bagley Securities, Inc. (Defendant), appeals from a judgment awarding damages to Plaintiffs John E. and Linda D. Carlson for breach of contract. Plaintiffs cross-appeal, challenging that portion of the judgment dismissing their claims against Defendant under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and under the Utah Uniform Securities Act, Utah Code Ann. § 61-1-22(1)(b). The issues are whether the district court erred in concluding that Defendant breached its contract with Plaintiffs to deliver certificates of stock within a reasonable time; whether it erred in concluding that misrepresentations made by Defendant to Plaintiffs were not "in connection with" the purchase or sale of a security under § 10(b); and whether it erred in concluding that the misrepresentations did not violate the Utah Uniform Securities Act because they occurred after the purchase or sale of a security. We affirm.
 
 
 3
 The district court found that in early 1989, Plaintiffs became aware of a company called Dial-A-Gift through conversations with their broker, Robert Lorsbach, who was employed by Aesir Securities. Lorsbach could not execute a sale of the stock because Aesir was not registered to transact business in Minnesota, where Plaintiffs resided. He suggested Plaintiffs contact Todd Knowles, who could execute the sale. Knowles was Defendant's employee.
 
 
 4
 In early April 1989, Plaintiffs called Knowles to inquire if he would purchase approximately $80,000 in Dial-A-Gift stock at the quoted price of $4 per share. At Lorsbach's suggestion, Mr. Carlson told Knowles he wanted the stock certificates delivered to him, Mr. Carlson. Knowles agreed and told Mr. Carlson he could expect to receive the certificates within ten days to two weeks after the trade. Between April 7 and 21, 1989, Plaintiffs paid Defendant almost $80,000 to purchase the stock.
 
 
 5
 Lorsbach told Knowles that Knowles could purchase the stock from Aesir. Knowles attempted to fill the order but could purchase only a portion of the shares because of tight market conditions. Because of this difficulty, Defendant decided to become a market maker[1] in Dial-A-Gift and to short the remaining shares to Plaintiffs. Defendant sold Plaintiffs 17,500 shares of Dial-A-Gift stock, 4,700 of which were purchased from other market makers, and 12,800 of which were shorted to Plaintiffs from Defendant's trading account. Lorsbach was aware that Defendant intended to short the shares. Lorsbach's knowledge was imputed to Plaintiffs.
 
 
 6
 Plaintiffs became concerned when they had not received the certificates by early May 1989. Mr. Carlson repeatedly asked Knowles to explain the delay. Mr. Carlson was assured the certificates were on their way. In a May 23, 1989, letter, Defendant informed Plaintiffs that it had purchased 17,500 shares of the stock from Midwest Clearing Corporation and Plaintiffs would receive the securities as soon as Defendant received them from Midwest.
 
 
 7
 When Plaintiffs still had not received the certificates as of June 20, 1989, they wrote a letter demanding delivery within five days. Defendant's counsel responded by alleging that a fraudulent distribution of Dial-A-Gift shares had occurred and stating that Defendant would not deliver the certificates until those allegations were disproved. Defendant did not offer to return Plaintiffs' money.
 
 
 8
 After Plaintiffs commenced this action in November 1989, Defendant transferred 17,200 shares into Plaintiffs' account. Plaintiffs refused delivery because the price quotes for the shares had significantly dropped.
 
 
 9
 Defendant challenges the district court's determination that Plaintiffs were entitled to rescission because Defendant breached its contract to deliver the certificates to Plaintiffs within a reasonable time.[2] Defendant argues that Plaintiffs lost nothing by not having possession of the certificates.
 
 
 10
 A party is entitled to rescission and restitution where there has been a material breach of the contract by the other party. Polyglycoat Corp. v. Holcomb, 591 P.2d 449, 451 (Utah 1979). A failure of performance which " 'defeats the very object of the contract' " or " 'is of such prime importance that the contract would not have been made if default in that particular had been contemplated' " is a material breach. Id. (quoting Havas v. Alger, 461 P.2d 857, 862 (Nev.1969)).
 
 
 11
 The evidence indicates that Plaintiffs invested to make a profit, not to get certificates. It was undisputed that they could have sold the shares although they did not have physical possession of the certificates. They were unable to identify any economic loss they suffered because they did not obtain the certificates.
 
 
 12
 However, the district court concluded that Plaintiffs were entitled to rescission under Utah Stat.Ann. § 70A-8-316, which provides
 
 
 13
 Unless otherwise agreed, the transferor of a certificated security or the transferor, pledgor, or pledgee of an uncertificated security on due demand must supply his purchaser with any proof of his authority to transfer, pledge, or release or with any other requisite necessary to obtain registration of the transfer, pledge, or release of the security.... Failure within a reasonable time to comply with a demand made gives the purchaser the right to reject or rescind the transfer, pledge, or release.
 
 
 14
 On its face, this section requires only a failure within a reasonable time to comply with a demand, rather than a showing of a material breach, to entitle a purchaser to rescission. Defendant has not argued that the district court misapplied this section, and we are not required to manufacture its argument. National Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1244 (10th Cir.1989). Defendant waived any error in the district court's application of this section.
 
 
 15
 Defendant challenges the district court's finding that Defendant failed to prove it was impossible to perform the contract. Defendant's owner and principal testified that he could have acquired the shares to cover the short sale if he had paid enough money. The district court's finding to this effect is not clearly erroneous.
 
 
 16
 Defendant contends that it delivered the certificates within a reasonable time, in light of the tightness of the market and its domination by Aesir Securities. Section 70A-8-316 provides no standards for determining what is a reasonable time for delivery, and Defendant has not suggested any, much less indicated our standard of review. See 10th Cir.R. 28.2(c). Again, we will not manufacture Defendant's argument for Defendant. National Commodity & Barter Ass'n, 886 F.2d at 1244. We therefore affirm the judgment as to the breach of contract claim.
 
 
 17
 Plaintiffs argue that the district court erred in concluding that the following misrepresentations were not actionable under § 10(b) and 17 C.F.R. § 240.10b-5 (Rule 10b-5): 1) Knowles' statement that the certificates would be delivered within ten days to two weeks after the trade; 2) Defendant's May 23, 1989, letter stating that Defendant had purchased 17,500 shares of stock through Midwest Clearing Corporation; 3) Defendant's counsel's July 5, 1989, letter stating that Defendant would not deliver the certificates because of a fraudulent distribution; and 4) an October 31, 1989, letter from Defendant's counsel to Midwest Clearing Corporation stating that delivery of the certificates would violate the Securities Act.
 
 
 18
 Section 10(b) provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance" in violation of Securities and Exchange Commission (SEC) rules and regulations. Rule 10b-5 provides that it is unlawful
 
 
 19
 (a) To employ any device, scheme, or artifice to defraud,
 
 
 20
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 
 
 21
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 
 
 22
 in connection with the purchase or sale of any security.
 
 
 23
 The district court found that Knowles' representation that the certificates would be delivered in ten days to two weeks was not false. A court's findings of fact in a case tried without a jury "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a).
 
 
 24
 The evidence shows that, at the time the statement was made, Knowles thought he could purchase the stock from Aesir. It was only when he tried to make the purchase that he discovered it would be difficult to purchase more than a few hundred shares. The district court's finding concerning the first statement is not clearly erroneous.
 
 
 25
 The district court found that the remaining three statements were false. Plaintiffs argue that the district court erred in concluding that these misrepresentations were not made "in connection with" the purchase under § 10(b) and Rule 10b-5. To prove a violation of Rule 10b-5, a plaintiff must establish that the defendant made a misrepresentation of a material fact upon which the plaintiff justifiably relied to his or her detriment. Grubb v. FDIC, 868 F.2d 1151, 1162 (10th Cir.1989). There must be a causal connection between the misrepresentations and the plaintiff's injury. Id. Mr. Carlson admitted that nothing Defendant did caused him to buy Dial-A-Gift stock. Appellee's App. at 6. The district court correctly concluded that the misrepresentations were not made in connection with the purchase of securities.
 
 
 26
 Plaintiffs next argue that they established a violation of the Utah Uniform Securities Act. Section 61-1-22(1) makes anyone who offers a security by means of any untrue statement of material fact liable to the purchaser. The district court concluded that Plaintiffs had not shown a violation of section 61-1-22(1) because the misrepresentations occurred after the purchase.
 
 
 27
 S & F Supply Co. v. Hunter, 527 P.2d 217, 221 (Utah 1974) (footnote omitted), held that, under section 61-1-22(1), "a buyer need only show by a preponderance of the evidence that in making the sale the seller made an untrue statement or omission concerning a material fact; and that the buyer did not know of the untruth or omission." The court further explained that a material fact under this section "must be something which a buyer or seller of ordinary intelligence and prudence would think to be of some importance in determining whether to buy or sell." S & F Supply Co., 527 P.2d at 221 (emphasis added) (footnote omitted). This indicates that the misrepresentation must be made before the buyer decides to buy. The misrepresentations in this case all occurred after Plaintiffs decided to buy the stock, and none played any role in Plaintiffs' decision to buy the stock. The district court correctly determined there was no violation of section 61-1-22(1).
 
 
 28
 The judgment of the United States District Court for the District of Utah is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 A market maker, as the term is used in this case, is "any dealer who, with respect to a security, holds himself out (by entering quotations in an inter-dealer communications system or otherwise) as being willing to buy and sell such security for his own account on a regular or continuous basis." 15 U.S.C. § 78c(a)(38)
 
 
 [2]
 The district court found that Plaintiffs knew of Defendant's intent to short the shares, and that the parties had an oral contract for Defendant to deliver the certificates within a reasonable time