Raymond E. McMILLEN, Jr. and Laura McMillen, Plaintiffs, Appellants,

v.

UNITED STATES DEPARTMENT OF TREASURY, et al., Defendants, Appellees.

No. 91–1264.

United States Court of Appeals, First Circuit.

Submitted June 28, 1991.

Decided Sept. 3, 1991.

Raymond and Laura E. McMillen, Jr., on brief, pro se.

Wayne A. Budd, U.S. Atty., Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, David I. Pincus and Kevin M. Brown, Attys., Tax Div., Dept. of Justice, on brief, for defendants, appellees.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

PER CURIAM.

This case arises out of a dispute between the Internal Revenue Service and the appellants, Raymond and Laura McMillen, over the McMillens' tax liability for the years 1978, 1979 and 1980. The McMillens seek millions of dollars in damages from the United States, and from a number of individual federal employees who they claim have acted in a "uniformly unresponsive ... arbitrary [and] capricious fashion" during the course of the tax dispute. They also seek an order directing the IRS, among other things, to release the liens it has placed on the McMillens' property.

The district court dismissed the McMillens' complaint on the grounds that the McMillens had failed to make proper service of process on the defendants, and that the district court lacked subject-matter jurisdiction over the claims stated therein. This appeal followed. We affirm, on the latter ground alone.[1]

## I

■ We start with the basic proposition that sovereign immunity bars lawsuits against the United States unless the United States has waived that immunity. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). This axiom forecloses reliance on two of the jurisdictional statutes that the McMillens cite as bases for their claim for damages against the United States. The Federal Tort Claims Act, 28 U.S.C. § 2674 et seq., waives sovereign immunity in many circumstances for tort claims, but specifically excepts from its coverage "[a]ny claim arising in respect of the assessment or collection of any tax...." 28 U.S.C. § 2680(c). Similarly, the Privacy Act, 5 U.S.C. § 552a(g)(1), waives sovereign immunity in some instances to allow a plaintiff to obtain damages for a federal agency's failure to maintain accurate records about him, but does not apply "directly or indirectly, to the determination of the existence or possible existence of liability (or the amount thereof) of any person for any tax...." 26 U.S.C. § 7852(e).

■ There are, of course, several statutes that do waive sovereign immunity for causes of action that concern taxation. None of them, however, provided the district court with jurisdiction over the McMillens' claim against the government. 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 together authorize a taxpayer who believes that the IRS has incorrectly assessed a tax liability against him to sue for a refund. Suits under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422, however, are subject to two important limitations. First, they must be

---

1. By affirming solely on subject-matter jurisdiction grounds, we do not imply that the district court erred in deciding that the appellants had not made proper service; rather, we simply do not reach the issue.

preceded by an administrative claim for a refund. 26 U.S.C. § 7422(a). Second, the taxpayer may not go to court until he has actually paid the assessment. *See Magnone v. United States*, 902 F.2d 192, 193 (2d Cir.1990). Because the McMillens did not satisfy these requirements, the district court lacked jurisdiction to entertain their lawsuit as a refund action.

◾ The McMillens' failure to comply with the refund procedure precludes them from maintaining a claim against the government under the guise of a non-refund action. This is because the "pay first and litigate later" rule, *see Falik v. United States*, 343 F.2d 38, 42 (2d Cir.1965), citing *Flora v. United States*, 362 U.S. 145, 162, 80 S.Ct. 630, 639, 4 L.Ed.2d 623 (1960), is applicable both to refund actions and to any non-refund action that the taxpayer attempts to use as a vehicle for a collateral attack on his tax assessment. Thus, the fact that the McMillens also sought an order directing the IRS to release the tax liens on their property did not give the district court jurisdiction over this lawsuit. Although 28 U.S.C. § 2410(a) allows a taxpayer to sue the United States to "quiet title" to property on which the government has placed a lien,[2] the "pay first and litigate later" rule limits Section 2410's waiver of sovereign immunity to cases where the taxpayer contests only the procedural validity of the lien, *see, e.g., Robinson v. United States*, 920 F.2d 1157, 1161 (3d Cir.1990) (IRS filed lien without sending notice of deficiency to taxpayer); *Ringer v. Basile*, 645 F.Supp. 1517, 1525–26 (D.Colo. 1986) (IRS seized property in violation of its own procedures), *Rodriguez v. United States*, 629 F.Supp. 333 (N.D.Ill.1986) (IRS levied on property without sending a notice

of deficiency), or where the taxpayer has already paid the assessment, *Overton v. United States*, 925 F.2d 1282, 1285 n. 1 (10th Cir.1991), or contends that some extrinsic event has rendered the lien unenforceable. *See, e.g., Roberts v. United States*, 436 F.Supp. 560, 561 (E.D.Tex.1977) (expiration of statute of limitations barred enforcement of lien).

Where, on the other hand, the taxpayer attempts to use Section 2410 to challenge the underlying tax liability—that is, where he seeks to have the lien released on the ground that he does not owe what the IRS says he owes—the suit cannot proceed. *See Elias v. Connett*, 908 F.2d 521, 527 (9th Cir.1990); *Pollack v. United States*, 819 F.2d 144, 145–46 (6th Cir.1987); *Laino v. United States*, 633 F.2d 626, 633 n. 8 (2d Cir.1980). Not until the taxpayer either settles his differences with the IRS, or observes the rules, pays the tax, files a refund action and obtains a judgment in his favor, may he sue under Section 2410 to obtain a release of the liens. *See Kurio v. United States*, 281 F.Supp. at 264 (proceedings pursuant to Section 2410 appropriate *after* taxpayer obtains judgment in refund action).

The McMillens have not alleged the existence of any procedural defect in the liens on their property. Rather, the heart of their claim is the substantive contention that they do not now owe, and have never owed, any money to the IRS for the years in question. For all that the complaint reveals, moreover, the McMillens' tax liability remains the subject of a live dispute with the IRS.[3] As long as that is so, any attack on the liens will necessarily involve a determination of the accuracy of the underlying assessment, a determination that

---

**2.** The McMillens rely on 28 U.S.C. § 1361 rather than Section 2410 as the jurisdictional basis of their request for an order directing the IRS to release the liens on their property. We need not determine here whether a "quiet title" action under Section 2410, or a mandamus action under Section 1361, is a more appropriate mechanism for obtaining such an order, since in either case the principles expressed in the text below would bar the McMillens' claim. *Cf. Kurio v. United States*, 281 F.Supp. 252, 264 (S.D.Tex.1968).

**3.** The McMillens do allege that the results of an "official exam hearing" conducted in November 1987 "clearly exonerate [them] from ANY tax liability" (emphasis in original). Nothing in the complaint suggests, however, that the IRS accepts this conclusion. It is one thing to say that the IRS *should* agree that a taxpayer has no tax liability, and quite another to say that the IRS *does* agree.

a district court cannot make until the jurisdictional prerequisites for a refund action have been fulfilled.

The McMillens have also cited 26 U.S.C. § 7432 as a basis for jurisdiction in this case. Section 7432, enacted in 1988 as part of a "Taxpayer Bill of Rights," authorizes suits against the United States for damages arising out of the IRS' deliberate or negligent failure to release a lien on the taxpayer's property as required "under section 6325." 26 U.S.C. § 6325 says that the Secretary of the Treasury must release a tax lien within thirty days after the Secretary finds that the amount assessed "has been fully satisfied or has become legally unenforceable."

Nothing in the record suggests that the assessment here has been "fully satisfied." Nor can we assume for jurisdictional purposes that the assessment is "legally unenforceable" by virtue of the McMillens' allegation that they do not owe the IRS any money. Section 7432 does not expressly incorporate the "pay first and litigate later" rule; but, as is the case with Section 2410, the new statute must be read and applied in light of that rule if it is to square with the tax collection and refund procedures already established by Congress. An interpretation that ignored the "pay first and litigate later" principle would invite taxpayers to circumvent the refund action process by litigating the merits of the assessments against them in the collateral setting of a suit for damages allegedly caused by the IRS' refusal to release the liens on their property. We will not, in the absence of an explicit statement of Congress' intention, read the relatively general language of Section 7432 to override a practice that is so well-settled and integral to the tax collection process. *Cf. Falik v. United States*, 343 F.2d at 42.

## II

The McMillens also asserted claims against a number of IRS employees, and argue that they were entitled to recover damages from those officials under the doctrine stated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We disagree, if for no other reason than that the events described in the complaint do not rise to the level of a constitutional violation. The McMillens alleged that the IRS agents who processed their case were rude, obstinate and negligent, but we agree with the Seventh Circuit that "[n]ot every interference with peace of mind is a deprivation of liberty within the meaning of the Constitution", and that "more must be shown than a lack of courtesy, accuracy, and restraint by internal revenue agents in the processing of tax returns." *Cameron v. Internal Revenue Service*, 773 F.2d 126, 129 (7th Cir. 1985).

Even if the behavior described in the complaint did constitute some sort of constitutional violation, moreover, we doubt that the creation of a *Bivens* remedy would be an appropriate response. "Congress has given taxpayers all sorts of rights against an overzealous officialdom". *Cameron v. Internal Revenue Service*, 773 F.2d at 129. Today these rights include, in addition to the right to sue for a tax refund under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422, and the ability to contest the validity of tax liens under 28 U.S.C. § 2410, the remedies enacted in the "Taxpayer Bill of Rights." When they are deployed in their proper time and place (that is, after administrative remedies have been exhausted, and when the action for damages is not used as a device to circumvent the "pay first and litigate later" rule by litigating the accuracy of a tax assessment in a collateral, non-refund action), these remedies enable an aggrieved taxpayer to recover damages for the sorts of abuses alleged here: the wrongful failure to release tax liens, 26 U.S.C. § 7432, and the reckless or intentional violation of any provision of the tax laws "in connection with any collection of Federal tax...." 26 U.S.C. § 7433(a). Congress has deemed Sections 7432 and 7433 the *exclusive* remedies for damages resulting from such abuses. *Id.*

The remedies Congress has created may not be perfectly comprehensive, but they

do supply "meaningful safeguards or remedies for the rights of persons situated" as the McMillens were, *Schweiker v. Chilicky,* 487 U.S. 412, 425, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988), and establish "that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the [administration of the tax laws]". *Id.* at 423, 108 S.Ct. at 2468. In such cases, the courts have declined to create new *Bivens* remedies. *Id. See also Wages v. Internal Revenue Service,* 915 F.2d 1230, 1235 (9th Cir. 1990); *National Commodity and Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1248 (10th Cir.1989); *Baddour, Inc. v. United States,* 802 F.2d 801, 807–8 (5th Cir.1986); *Cameron v. Internal Revenue Service,* 773 F.2d at 129.

The judgment of the district court is *affirmed.*