**RETIREMENT CARE ASSOCIATES, INC., et al., Plaintiffs,**

v.

**UNITED STATES, et al., Defendants.**

No. 1:96–CV–2499–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 27, 1998.

Richard N. Hubert, David DeCoursey Aughtry, Chamberlain Hrdlicka White, Williams & Martin, Atlanta, GA, for Retirement Care Associates, Inc., Capitol Care Management Company, Inc., Retirement Management Corporation, Renaissance Retirement, Ltd., Renaissance Retirement, Ltd. II, Retirement Village, Ltd., Pheo Med Limited Partnership, Southeastern Cottages, Inc., Retirement Village of Jackson, Ltd., National Assistance Bureau, Inc., Gordon Jensen Health Care Associates, Inc., Chamber Health Care Society, Inc., Sea Breeze Health Care Center, Inc., Arrowhead Partners, Ltd., Libbie Rehabilitation, Inc., Phoenix Associates, Inc., Brent Lox Hall Nursing Home, Inc., Sea Side Retirement, Inc., West Tennessee, Inc., Mid Florida, Inc., Atrium of Jacksonville, Ltd., plaintiffs.

James Randolph Schulz, Office of United States Attorney, Northern District of Georgia, Atlanta, GA, Sean M. O'Connor, U.S. Department of Justice, Washington, DC, for United States of America, By and through The Internal Revenue Service, Atlanta, Georgia and Washington, D.C., defendants.

## ORDER

MOYE, District Judge.

Plaintiffs filed this suit alleging various violations relating directly or indirectly to Defendants' efforts to collect Plaintiffs' employment taxes. The case is before the Court on Defendants' motion for summary judgment. For the reasons stated below, the Court GRANTS Defendants' motion for summary judgment in part and DENIES it in part.

## BACKGROUND

Plaintiffs are a group of related entities that own, operate, or manage nursing and retirement homes. Retirement Management Corporation (Retirement Management) is wholly owned by Capitol Care Management Company, Inc. (Capitol Care); Capitol Care is wholly owned by Retirement Care Associates, Inc. (Retirement Care); Retirement Care is a publicly traded corporation. Most, if not all, of the physical facilities used by Plaintiffs are owned by Retirement Care, and management and marketing services for all Plaintiffs are provided by either Capitol Care or Retirement Management. The principal place of business of Retirement Management is Suite 200, 6000 Lake Forest Drive, Atlanta, Georgia 30328. The principal place of business of Capitol Care is Suite 225, 6000 Lake Forest Drive, Atlanta, Georgia 30328. The principal place of business of Retirement Care is Suite 550, 6000 Lake Forest Drive, Atlanta, Georgia 30328. All other Plaintiffs maintain their principal offices at Suite 200, 6000 Lake Forest Drive, Atlanta, Georgia 30328. Suites 200 and 225 are adjoining and interconnected suites, and the two addresses are used interchangeably as the mailing and business addresses of all plaintiffs. Funds for all Plaintiffs are comingled in accounts maintained by Capitol Care, which handles all financial matters, including the payment of payroll and other taxes. Although funds for all Plaintiffs are maintained in the same bank accounts, all funds are allocated to specific entities.

Defendants include the United States and several employees of the Internal Revenue Service (IRS).

Plaintiffs and Defendants agree that Plaintiffs' tax forms have generally been filed in a timely manner. They disagree, however, as to whether deposits and taxes have been paid on time. Plaintiffs contend their taxes have been paid in a timely manner but that the payments have been misapplied to unlawfully assessed penalties. Plaintiffs further contend that any late deposits are isolated occurrences. Defendants contend Plaintiffs have a lengthy history of not making timely deposits and not paying federal tax liabilities. Defendants further contend that, as a result of this delinquency, Plaintiffs have been assessed both interest and penalties, and that, between 1992 and 1996, at least one Plaintiff had an outstanding tax liability at all times. Plaintiffs are contesting the penalties in an IRS administrative appeal.

Defendants have made efforts to collect the outstanding taxes, interest, and penalties. Whereas Defendants contend they have provided transcripts of Plaintiffs' accounts, Plaintiffs contend they have requested, but have not received, statements for each accounting period showing the original tax liability, the assessed interest and penalties, and the computations for those additional liabilities. Defendants contend levies upon Plaintiffs' property have been released upon Plaintiffs' representations that the tax liabilities would be paid in full, but that payments were not made and new liabilities were incurred. Plaintiffs contend the levies were released only upon actual payment of the liabilities claimed to be due. Defendants contend that, as a result of meetings with Plaintiffs, and at Plaintiffs' request, numerous payments have been reapplied to satisfy different liabilities and errors made by Plaintiffs have been corrected, resulting in reduced interest and penalties for some Plaintiffs and increased interest and penalties for other Plaintiffs.

On March 7, 1996, Devorah Williams and Judith R. Adams, representing the IRS, met with C. Winston Freeman and Thomas J. Stalzer, representing Plaintiffs. Saltzer proposed: (1) the IRS refrain from collection activities; (2) Retirement Care, Capitol Care, and Retirement Management pay the tax portion of their outstanding liabilities and file appeals or offers in compromise for the remaining amounts outstanding; and (3) three or four other Plaintiffs pay the tax portion of their outstanding liabilities every two weeks and file appeals or offers in compromise for the remaining amounts outstanding. Plaintiffs contend the IRS agreed to the proposal. Defendants contend the proposal was rejected but that the IRS proposed, instead, that it would refrain from attempting to collect outstanding penalties if all related corporate entities met the following conditions by March 15, 1996:

1. Pay the tax and interest owed on all of their outstanding tax liabilities;

2. Present a written request for abatement of penalties;

3. File any delinquent Forms 941, 940, and 1120 for any period already ended and make all required tax deposits of their Form 941 liabilities for the first quarter of 1996; and

4. Provide proof of federal tax deposits due by March 15, 1996, for their Form 941 liabilities for the first quarter of 1996 and complete financial statements.

At the March 7 meeting, the IRS provided Plaintiffs with unpaid balances (including taxes, interest, and penalties) for Retirement Care, Capitol Care, and Retirement Management. Plaintiffs contend these balances were not current and did not include a breakdown of tax, penalties, and interest for each tax period.

On March 12, 1996, Williams spoke to Freeman; gave him the balances due for Retirement Care, Capitol Care, and Retirement Management; and told him that immediate enforcement action would result if the outstanding liabilities were not satisfied. Defendants contend that, when the conditions had not been met by March 15, 1996, Williams informed Stalzer that all entities must pay all taxes, interest, and penalties or the IRS would begin enforcement action.

On March 20, the IRS received checks for the amounts Williams had indicated were the outstanding taxes for Retirement Care, Capitol Care, and Retirement Management. With the checks, the IRS received a letter from Stalzer requesting the reapplication of

certain payments. Williams contacted Stalzer on March 21, informed him that payments applied to interest and penalties would not be reapplied, and told him that Retirement Care still owed $240,999.97. Defendants contend Williams further informed Stalzer that the conditions established at the March 7, 1996 meeting had not been met, that the tax liabilities had not been satisfied, and that she intended to proceed with collection actions against Retirement Care, Capitol Care, and Retirement Management.

On March 22, Plaintiffs reiterated a previous offer to place publicly traded stock with a market value of $3 million in an escrow account to secure the IRS against any failure of Plaintiffs to pay their tax liabilities. The IRS refused this offer.

Also on March 22, Williams prepared an affidavit in support of an application for a writ of entry to the business premises of Retirement Care. The affidavit and a data sheet, also prepared by Williams, were submitted to the IRS District Counsel's office to prepare an application for a writ of entry. The unpaid balance of outstanding liabilities for Retirement Care stated in the affidavit was calculated as of April 5, 1996, two weeks in the future, and showed a total unpaid balance of $669,236.72. Defendants contend the balance did not include additional, more recent outstanding tax liabilities of $76,126.84 (Forms 941 and 940) and $2,830,369.35 (Form 1120). Late on the afternoon of March 22 (Friday), after she prepared and signed the affidavit, Williams received a letter from Stalzer containing a check from Capitol Care for $240,999.97, the amount requested by Williams on March 21. The check contained a notation that it was to be applied to Retirement Care's Form 941 liability for the first quarter of 1995. On Monday, March 25, Williams exchanged the check for a cashier's check, deposited the cashier's check, and applied the payment as requested.

On Thursday, March 28, Williams accompanied an Assistant United States Attorney to the district court to obtain the writ of entry for which she had prepared the affidavit on March 22. Because Retirement Care's Form 941 liability for the first quarter of 1995 was included in the total unpaid balance

of $669,236.72 shown on Williams' affidavit and because Williams did not change her affidavit to reflect the $240,999.97 payment, the affidavit overstated the amount owed by Retirement Care. Williams acknowledges that the affidavit contained several inaccuracies. The writ of entry was granted, and a levy form was prepared for the total amount of $669,236.72. Williams, accompanied by several revenue officers went to the offices of Retirement Care, gave copies of the writ and levy to Christopher Brogdon, president of Retirement Care, and told Brogdon that the seizure could be stopped only by the payment of the full $699,236.72. Brogdon insisted that the seizure was in error and refused to identify the assets of Retirement Care. Seizure notices were placed outside the doors to Suites 200 and 225, and a revenue officer began preparing an inventory. Williams was offered a check for $669,236.72 which she refused, indicating that she needed certified funds before she could release the seizure. A short time later she was offered a cashier's check for $669,236.72 which she accepted. When questioned about the $240,999.97 payment, Williams explained that the payment had been received and applied to Retirement Care's account but that she was required to collect the full $669,236.72 specified in the notice of levy. Defendants contend Williams further indicated that any overpayment would be refunded to the extent it was not needed to satisfy other unpaid tax liabilities of Retirement Care. Plaintiffs contend Williams merely indicated that any overpayment would be refunded. Williams provided Retirement Care with releases, and she and the revenue officers left.

During the years 1993 through 1996, Retirement Care and its related entities acquired new entities, making it necessary for the IRS to gather additional information regarding the financial status, relationships, and existence of assets and liabilities of all Plaintiffs. Defendants contend Plaintiffs did not provide complete and timely information, despite repeated requests. Plaintiffs contend they have provided financial information as it was available, suggesting that they were unable to provide some information because

of the financial status of some of the new entities they acquired.

In April and May 1996, Plaintiffs presented written requests for abatement of the penalties assessed against them. Defendants contend the requests did not contain sufficient information to evaluate the requests. Plaintiffs contend the requests did contain sufficient information to show their correctness. On June 20, 1996, Plaintiffs representative was notified that the requests for abatement did not establish reasonable cause for abating the penalties. On June 28, 1996, IRS employees met with Plaintiffs' representatives in an attempt to resolve Plaintiffs' tax problems. Defendants contend Plaintiffs failed to provide sufficient information to evaluate the reasons for Plaintiffs' untimely deposits; Plaintiffs contend they provided all information requested by the IRS.

On August 3, 1996, Plaintiffs filed a joint appeal of the denial of their request to abate penalties. Williams informed Plaintiffs that IRS collection activities would continue while the appeal was pending. Defendants contend the collection activities continued because of Plaintiffs' failure to make timely deposits. Plaintiffs contend Williams' refusal to suspend collection activities was part of her continued harassment.

Defendants contend Plaintiffs continued to refuse to provide complete and timely financial information necessary to develop a comprehensive collection plan. Plaintiffs contend old information was provided at the request of the IRS and that the necessary information had previously been provided.

During August and September 1996, the IRS issued administrative summonses to third parties. Defendants contend the summonses were issued because Plaintiffs would not provide the current and complete information necessary to establish a comprehensive collection plan and that they were issued to banks, trust companies, mortgage companies, federal administrative agencies, county administrative agencies, property management companies, public utilities, and owners of property leased to or rented by Plaintiffs and their related entities. Plaintiffs contend they provided all the financial information that was available or that was requested, that

summonses were sent to entities having no relationship with any of the Plaintiffs, and that the summonses were issued only as a means of harassing them and causing them to give in to the IRS in the dispute over penalties.

Plaintiffs filed this case on September 25, 1996. They alleged the IRS misapplied certain payments, creating shortfalls and "stacking" delinquency penalties, and thus undermined Plaintiffs' efforts and ability to meet current tax obligations. Plaintiffs further alleged the affidavit filed in support of the March 28, 1996 writ of entry was false and that the summonses, which disclosed Plaintiffs' return information, were made for improper purposes. Plaintiffs seek injunctive relief as well as monetary damages.

At a TRO hearing on September 26, 1996, the Court ordered Plaintiffs to supply certain specified information to Defendants by November 22, ordered Defendants to refrain from making any third-party contacts until the next hearing and to withdraw any third-party summonses which had already been issued, and scheduled another hearing for December 5 to address Plaintiff's compliance with the order. On October 22, 1996, the Court issued a written order memorializing the orders issued orally at the September 26 hearing. On November 15, 1996, Defendants filed a motion to vacate the October 22 order, and on November 26, Plaintiffs filed a motion to extend the October 22 order permanently.

At the request of the parties, the hearing scheduled for December 5, 1996, was rescheduled for December 19. On December 18, the parties notified the Court that the hearing appeared to be unnecessary due to Plaintiffs' production of information.

Defendants filed a motion for summary judgment and a motion to suspend commencement of the discovery period pending resolution of the motion for summary judgment. The motion to suspend commencement of the discovery period was granted. In response to the motion for summary judgment, Plaintiffs filed a motion pursuant to Fed.R.Civ.P. 56(f), seeking discovery.

On September 10, 1997, this Court issued an order denying Plaintiffs' Rule 56(f) motion

and denying without prejudice the motions to vacate and to extend permanently the October 22, 1996 order.

## LEGAL STANDARDS AND ANALYSIS

### I. *Summary Judgment*

Courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of [the record] 'together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437–38 (11th Cir.1991).

In meeting this initial responsibility, for issues on which the moving party would bear the burden of proof at trial, the moving party must show affirmatively the absence of a genuine issue of material fact. *Four Parcels of Real Property,* 941 F.2d at 1438. For issues on which the non-moving party would bear the burden of proof at trial, the moving party may simply show that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial. *Id.*

In determining whether the moving party has met its burden, the court views the evidence in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 158–59, 90 S.Ct. 1598. Moreover, "[r]easonable doubts as to the facts should be resolved in favor of the nonmoving party," *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580, 1582 (11th Cir.1986), "and all justifiable inferences are to be drawn in his favor," *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). The moving party's failure to meet this initial burden ends the inquiry, and summary judgment should be denied.

Once the moving party has met this initial burden, the "burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir.1991). At this point, "the non-moving party [must] go beyond the pleadings and by affidavits of [his or her] own, or by the 'depositions[,] answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Russ v. International Paper Co.,* 943 F.2d 589, 592 (5th Cir.1991) (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). *Accord, Four Parcels of Real Property,* 941 F.2d at 1437–38. Whether facts are material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To avoid summary judgment on an issue on which the moving party would bear the burden of proof at trial, the non-moving party must come forward with evidence sufficient to call into question the moving party's evidence and any inference drawn from the evidence. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir.1993). For an issue on which the non-moving party would bear the burden of proof at trial and on which the moving party has provided evidence to negate the material fact, the non-moving party "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* at 1116. Finally, for an issue on which the non-moving party would bear the burden of proof at trial and on which the moving party has demonstrated an absence of evidence, the non-moving party must respond either by

> show[ing] that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, ... [or by] com[ing] forward with additional evidence sufficient to withstand

a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* at 1116–17.

## II. Count One (Prohibitory Injunction); Count Two (Mandatory Injunction)

Defendants contend they are entitled to summary judgment as to Counts One and Two because the courts are prohibited by the Anti–Injunction Act, 26 U.S.C. § 7421, from exercising jurisdiction over suits attempting to restrain the assessment or collection of taxes. Plaintiffs contend the Act does not apply as they are not attempting to restrain the assessment or collection of taxes but are attempting to restrain Defendants' illegal activities, including the submission of a false affidavit in support of the application for the March 28, 1996 writ of entry and the disclosure of return information by issuing administrative summonses to third parties.

▬▬ Part of the Internal Revenue Code, the Anti–Injunction Act provides that, with certain limited exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The "manifest purpose [of the Anti–Injunction Act] is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). "[I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists." *Id.* "[T]he Supreme Court has [also] recognized that the Anti–Injunction Act was not intended to bar an action where . . . Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax." *Leves v. Internal Revenue Service, Commis-*

*sioner,* 796 F.2d 1433, 1434 (11th Cir.1986). Finally, where the IRS fails to comply with the requirements of the Internal Revenue Code or with other applicable statutory or constitutional provisions, a taxpayer's suit is not barred by the Anti–Injunction Act. *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 617, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); *Laing v. United States,* 423 U.S. 161, 184, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976).

▬▬ The fact that a constitutional violation is alleged does not mean that the Anti–Injunction Act does not apply. *Linn v. Chivatero,* 714 F.2d 1278, 1282 (5th Cir.1983). "On the other hand, the fact that IRS agents, rather than some other government officials, were allegedly responsible for the constitutional violation does not deprive [the court] of the power to remedy that violation where the agents' status as tax officials is incidental to the underlying complaint." *Id.* The court must, therefore, decide whether the primary purpose of the case is to restrain the collection of taxes or to prohibit actions by IRS agents that violate constitutional rights. *Id.*

▬▬ Plaintiffs have alleged Defendants engaged in illegal activities in attempting to assess and collect Plaintiffs' taxes, both by submitting a false affidavit in support of the March 28, 1996 writ of entry and by revealing return information. The Court therefore finds Plaintiffs are attempting to prohibit illegal actions by IRS agents rather than merely to restrain the collection of taxes. Defendants are not entitled to summary judgment as to Counts One and Two.

## III. Count Three (Reckless Collection Actions and Intentional Disregard of Statutes and Regulations, I.R.C. § 7433 [1]); Count Four (Knowing or Negligent Disclosure of Tax Return Information, I.R.C. § 7431)

Defendants contend they are entitled to summary judgment as to Counts Three and Four because none of the actions complained of are actionable under I.R.C. § 7433, the exclusive remedy for violations arising in

---

**1.** Although the Complaint indicates that Count Three is brought pursuant to § 7431, the Court assumes this is a typographical error as § 7431 provides remedies for "unauthorized disclosure of returns and return information," whereas § 7433 provides remedies for "unauthorized collection actions."

connection with any collection of a federal tax. Specifically, they contend: (1) Williams' false affidavit is not actionable because Williams' conduct was merely careless, not reckless or intentional; (2) the summonses cannot be the basis for recovery pursuant to § 7431 because they were issued as part of Defendants' collection activities and § 7433 provides the exclusive remedy for improper collection activities; and (3) if recovery for the summonses is permitted pursuant to § 7431, the summonses, which they acknowledge were "return information," were authorized by I.R.C. § 6103(k)(6).

Plaintiffs contend Defendants violated both the Fourth Amendment and the Internal Revenue Code by conducting a warrantless search on March 28, 1996, because the writ of entry, obtained by use of a false affidavit, was invalid. They also contend the levy underlying the invalid writ of entry was imposed in violation of the Internal Revenue Code because they had not "refused or neglected" to pay a tax as required by I.R.C. § 6331(a). Plaintiffs further contend that issuance of the summonses were not authorized by I.R.C. § 6103(k)(6) because some of the information requested was not necessary and the information was "otherwise reasonably available." Finally, they contend they may recover under either § 7433 or § 7431 for the improper disclosure of their return information through the issuance of the summonses.

A. *Whether Plaintiffs are limited to claims brought pursuant to § 7433*

A taxpayer may seek damages against the United States if, "in connection with any collection of Federal tax ..., any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title." I.R.C. § 7433(a). With the exception of damages for failure to release a lien, an action pursuant to § 7433 "shall be the exclusive remedy for recovering damages resulting from [collection actions]." *Id.* A taxpayer may seek damages against the United States if, "any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of section 6103." I.R.C. § 7431(a). Section 6103 provides that tax returns and return information "shall be confidential" and prohibits disclosure except as specifically authorized by the Internal Revenue Code. I.R.C. § 6103(a).

Defendants cite *Venen v. United States,* 38 F.3d 100 (3rd Cir.1994), and *Wilkerson v. United States,* 67 F.3d 112 (5th Cir.1995), in support of their contention that Plaintiffs have not stated a claim pursuant to § 7431 as § 7433 provides the exclusive remedy for improper collection activities. In both *Venen* and *Wilkerson,* the plaintiffs sought to recover damages pursuant to § 7431 for the allegedly improper disclosure of return information through notices of levy. *Venen,* 38 F.3d at 104; *Wilkerson,* 67 F.3d at 114. Both courts addressed the issue of whether the validity of the underlying levy should be considered in determining whether a disclosure of return information through the issuance of a notice of levy violates § 6103. *Venen,* 38 F.3d at 104–106; *Wilkerson,* 67 F.3d at 116–117. Although both courts determined that the validity of the underlying levy may not be considered, neither court suggested that a claim may not be brought pursuant to § 7431 merely because the allegedly improper disclosure occurred as part of IRS collections efforts. Instead, both courts found that § 6103 had not been violated. *Venen,* 38 F.3d at 104; *Wilkerson,* 67 F.3d at 117. Both courts noted the distinction Congress had drawn between improper information handling and improper collection activities. *Venen,* 38 F.3d at 105; *Wilkerson,* 67 F.3d at 116–117. In *Venen* and *Wilkerson,* the concern was improper collection activity rather than improper information handling. *Venen,* 38 F.3d at 105; *Wilkerson,* 67 F.3d at 117.

■ The Court finds that Plaintiffs, by alleging Defendants illegally issued the summonses, have expressed a concern about improper information handling, only indirectly related to collection activities. Plaintiffs are not limited to claims brought pursuant to § 7433.

B. *Whether Plaintiffs have stated a claim
for improper collection activities pursu-
ant to § 7433*

 The IRS may collect unpaid taxes by
levying upon the property of the taxpayer if
the taxpayer "neglects or refuses to pay" the
tax. 26 U.S.C. § 6331(a). Where IRS
agents enter private premises to find and
levy upon property of a taxpayer, that entry
must be pursuant to a valid warrant. *G.M.
Leasing Corp. v. United States*, 429 U.S. 338,
358, 97 S.Ct. 619 (1977).

 The Court finds that Plaintiffs have
presented sufficient evidence to create a gen-
uine issue of material fact as to whether the
affidavit presented in support of the March
28, 1996 writ of entry was created in reckless
or intentional disregard of the provisions of
the Internal Revenue Code and as to wheth-
er Plaintiffs neglected or refused to pay their
taxes. Defendants are therefore not entitled
to summary judgment as to Count Three.

C. *Whether Plaintiffs have stated a claim
for improper disclosure of return infor-
mation pursuant to § 7431*

An IRS employee may disclose return in-
formation "to the extent that such disclosure
is necessary in obtaining information, which
is not otherwise reasonably available, with
respect to the correct determination of tax,
liability for tax, or the amount to be collected
or with respect to the enforcement of any
other provision of this title." I.R.C.
§ 6103(k)(6). If the invalid disclosure result-
ed "from a good faith, but erroneous, inter-
pretation of section 6103," no liability arises.
I.R.C. § 7431(b).

 The Court finds that Plaintiffs have
presented sufficient evidence to create a gen-
uine issue of material fact as to whether the
information sought through the summonses
was otherwise reasonably available and
whether Defendants' issuance of the sum-
monses resulted from a good faith interpreta-
tion of § 6103. Defendants are therefore not
entitled to summary judgment as to Count
Four.

IV. *Count Five—(Violation of Right to Pri-
vacy by Distribution of Confidential
Information)*

Defendants contend the court does not
have jurisdiction to hear this claim because
Plaintiffs failed to present an administrative
claim to the appropriate federal agency.
They further contend Plaintiffs' claims are
not actionable under the FTCA because
claims arising from the assessment or collec-
tion of taxes are not permitted.

Plaintiffs agree that the FTCA would not
apply if Defendants had been acting within
the scope of their employment. Plaintiffs
contend, however, that Defendants were not
acting within the scope of their employment
and are, therefore, individually liable.

 "The issue of whether an employee
acted within the scope of his employment is
determined by the law of the state where the
alleged tort occurred." *Green v. Hill*, 954
F.2d 694, 698 (11th Cir.), *modified in unre-
lated part*, 968 F.2d 1098 (11th Cir.1992).
Under Georgia law, a person is liable for
torts committed by "his servant by his com-
mand or in the prosecution and within the
scope of his business." O.C.G.A. § 51–2–2.

> "In the scope of his business," "in the
> scope of his employment," and similar ex-
> pressions, have sometimes been given too
> narrow a meaning. If the act done by the
> employee is done in the prosecution of the
> business of the employer, that is, if the
> employee is at the time of the commission
> of the wrongful act engaged in serving his
> employer, the wrongful act is done "in the
> prosecution and within the scope of" the
> employer's business.

*Andrews v. Norvell*, 65 Ga.App. 241, 243–44,
15 S.E.2d 808 (1941). *See also, American
Security Co. v. Cook*, 49 Ga.App. 723, 724,
176 S.E. 798 (1934) ("if the act is done in the
prosecution of the master's business, that is,
*if the servant is at the time engaged in
serving the master, the latter will be liable*"
(emphasis in original)).

> The rule is that for all acts done by a
> servant in obedience to the express orders
> or directions of the master, or in the exe-
> cution of the master's business, within the
> scope of his employment, and for acts in

any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible.

*Dawson Motor Co. v. Petty,* 53 Ga.App. 746, 748–49, 186 S.E. 877 (1936).

 "[I]f a servant steps aside from his master's business, for however short a time, to do an act *entirely* disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable." *Jump v. Anderson,* 58 Ga.App. 126, 128, 197 S.E. 644 (1938) (quotations omitted)(emphasis added). "The test is ... whether the servant was at that time engaged in serving his master." *Id.* "[I]f a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act was so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the course of his employment." *Id.* at 129, 197 S.E. 644. *See also, Andrews,* 65 Ga.App. at 245, 15 S.E.2d 808 (where the servant is engaged in the master's business within the scope of his employment, the master will be liable even if the servant joins with this some private purposes of his own); *Green,* 954 F.2d at 698 (if the tort of the employee was *wholly* personal, it is not within the scope of his employment even if it occurred during work time).

 The acts of which Plaintiffs complain were all related to Defendants' efforts to collect Plaintiffs' taxes or to collect information for tax related purposes. The Court finds that the individual defendants were acting within the scope of their employment under Georgia law. Defendants are therefore entitled to summary judgment as to Count Five.

## V. *Count Six—(Willful Violation of Constitutional Rights)*

Defendants contend Plaintiffs cannot recover on their *Bivens*[2] claims because federal law does not recognize a cause of action for damages based on alleged constitutional violations by IRS employees in legitimate tax collection actions. Defendants further contend the actions complained of do not rise to the level of constitutional violations. Finally, they contend the individual defendants are entitled to qualified immunity as they were acting within their discretionary authority and their actions were objectively reasonable under the law at the time of the incident.

Plaintiffs acknowledge that many courts have barred suits against IRS employees for Fifth Amendment due process violations which occur during legitimate tax collection actions, but contend that the same cases have permitted *Bivens* actions for Fourth Amendment search and seizure violations. They further contend Defendants are not entitled to qualified immunity because qualified immunity does not protect officials who knowingly file false affidavits in support of search warrants.

 "In order to sustain a *Bivens* type action, the plaintiff must first demonstrate that his constitutional rights have been violated." *Garcia v. United States,* 666 F.2d 960, 962 (5th Cir. Unit B, 1982) (citing *Davis v. Passman,* 442 U.S. 228, 248, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)). If, however, "the design of a Government program suggests that Congress has provided what it considers to be adequate remedies for constitutional violations that may occur in the course of the program's administration," the courts should not recognize an additional, *Bivens* remedy. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). "Congress has provided specific and meaningful remedies for taxpayers who challenge overzealous tax assessment and collection activities." *Vennes v. An Unknown Number of Unidentified Agents,* 26 F.3d 1448, 1454 (8th Cir.1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). The "carefully crafted legislative remedies [provided by §§ 7431 and 7433] confirm that, in

---

**2.** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

the politically sensitive realm of taxation, Congress's refusal to permit unrestricted damage actions by taxpayers has not been inadvertent." *Id. See also, McMillen v. United States Dept. of Treasury,* 960 F.2d 187 (1st Cir.1991). The courts have, however, allowed *Bivens* claims for violations of the First and Fourth Amendments, finding that the "values ... protected by the first and fourth amendments[ ] may be superior to the need to protect the integrity of the internal revenue system." *National Commodity and Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1248 (10th Cir.1989). *See also, National Commodity and Barter Ass'n v. Archer,* 31 F.3d 1521 (10th Cir.1994); *Cameron v. Internal Revenue Service,* 773 F.2d 126, 128 (7th Cir. 1985); *Rosado v. Curtis,* 885 F.Supp. 1538 (1995), *aff'd* 84 F.3d 437 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 689, 136 L.Ed.2d 612 (1997).

 "Qualified immunity protects government officials performing discretionary functions from civil liability under federal law unless their conduct violates a 'clearly established federal statutory or constitutional right of which a reasonable person would have known.'" *Kelly v. Curtis,* 21 F.3d 1544, 1550 (11th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The "objective-reasonableness test provides qualified immunity protection to all but the plainly incompetent or those who knowingly violate the law." *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991) (quotations omitted). It is clearly established law that "the Constitution prohibits an officer from making perjurious or recklessly false statements in support of a warrant" but "the rule does not apply to negligent misrepresentations or omissions." *Kelly,* 21 F.3d at 1554 (citing *Franks v. Delaware,* 438 U.S. 154, 156, 165–71, 98 S.Ct. 2674 (1978)).

 Plaintiffs have alleged a Fourth Amendment violation caused by Williams' submission of a false affidavit in support of the March 28, 1996 writ of entry. The Court finds that Plaintiffs have presented sufficient evidence to create a genuine issue of material fact as to whether Williams perjuriously or recklessly presented the false affidavit.

Plaintiffs have not presented sufficient evidence to create a genuine issue of material fact as to Defendants Murphy, Adams, or Lains. Defendants are therefore entitled to summary judgment as to Count Six as to Defendants Murphy, Adams, and Lains, but not as to Defendant Williams.

## VI. *Demand for Trial by Jury*

 Plaintiffs demanded a jury trial. Defendants contend Plaintiffs are not entitled to a jury trial as to their § 7431 and § 7433 claims. Plaintiffs did not respond to Defendants contention.

 The Court finds that Plaintiffs are not entitled to a jury trial as to their § 7431 and § 7433 claims. *See, Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). The court notes, however, that Plaintiffs are entitled to a jury trial as to their *Bivens* claim. *See, Carlson v. Green,* 446 U.S. 14, 15, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

## CONCLUSION

The Court DENIES Defendants' motion for summary judgment as to Counts One, Two, Three, and Four, and as to Count Six as to Defendant Williams. The Court GRANTS Defendants' motion for summary judgment as to Count Five and as to Count Six as to Defendants Murphy, Adams, and Lains. The following issues remain for trial: (1) whether Williams actions in submitting a false affidavit in support of the March 28, 1996 writ of entry were reckless or intentional or merely careless; (2) whether Plaintiffs "refused or neglected" to pay taxes; (3) whether the information requested in the summonses was "otherwise reasonably available;" and (4) whether issuance of the summonses resulted from a good faith interpretation of § 6103. Plaintiffs will also have to prove any damages resulting from Defendants' allegedly illegal activities.

The parties are directed to submit a Pre–Trial Order within twenty (20) days of the date of this order.