Barron v. IRS                          CV-97-271-JD  03/18/98  P
            UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE

Shirley Barron

     v.                              Civil No. 97-271-JD

United States of America, et al.


                          O R D E R


     The plaintiff, Shirley Barron, both individually and in her
capacity as administratrix of the estate of Bruce Barron, brought
this action against the United States of America and Revenue
Agent Donna Greeley, a revenue officer of the Internal Revenue
Service ("IRS").  The plaintiff alleges that Greeley engaged in
outrageous conduct during the course of her attempts to collect
taxes owed by the Barrons, that the conduct of Greeley and other
IRS agents caused her husband Bruce Barron to commit suicide, and
that the IRS wrongfully failed to follow through on its agreement
to compromise the Barrons' tax liability.  Before the court is
Greeley's motion to dismiss the claims against her in count II
(document no. 6).


                       Background[1]

     The IRS assessed outstanding tax liabilities of the Barrons

_____

     [1]The court summarizes the factual background of the case
relevant to the instant motion.  Disputed issues of fact are
presented as alleged by the plaintiff.

from the years 1986, 1988, 1989, 1991, and 1992.  By April 1993, the outstanding tax liability of the Barrons, including interest, exceeded $200,000.  The IRS assigned the case to Revenue Agent Greeley for collection.  Greeley "intentionally and maliciously" abused her power as a revenue agent by conducting "unauthorized, unwarranted and malicious collection procedures" against the Barrons.  Pls.' Second Am. Compl., ¶ 12.

The Barrons lacked sufficient assets to satisfy their total tax liability.  In April 1994, the Barrons made an offer in compromise as authorized by 26 U.S.C. §§ 7121, 7122.  In August 1994, they submitted a revised offer.  In a letter dated May 30, 1995, the IRS informed the Barrons that their offer in compromise would be rejected within thirty days, unless they requested an appeals conference.  The Barrons requested the appeals conference, which was held in September 1995.

The plaintiff alleges that at the meeting, Appeals Settlement Officer Ken Shuman informed the Barrons that Greeley had acted improperly and stated that he would be preparing an acceptance of the Barrons' offer in compromise in the near future.  No acceptance of the offer in compromise was ever prepared.  In addition, IRS agents failed to keep the Barrons appraised of the status of their request.

On August 6, 1996, Bruce Barron committed suicide at the family's vacation home in Chatham, Massachusetts.  He left behind

2

a note indicating that the actions of the IRS and his primary lending institution, Pelham Bank & Trust, had caused his desperation. Just prior to the suicide, Pelham Bank & Trust had instituted foreclosure proceedings against the Barrons' property, allegedly because the IRS refused to accept the Barrons' offer in compromise as it had promised to do.

Bruce Barron had substantial life insurance policies, the proceeds of which improved the plaintiff's financial situation. The IRS ceased consideration of the Barrons' offer in compromise upon learning of the death of Bruce Barron pursuant to an IRS policy which provides that consideration of an offer in compromise ceases upon the death of a joint taxpayer.

In count I of her second amended complaint, the plaintiff alleges that the United States is liable to her for the collection actions of Greeley and others pursuant to 26 U.S.C. § 7433. In count II, she alleges that Greeley is individually liable under the doctrine of Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In count III, the plaintiff alleges that the United States breached a contract with her and her husband to accept their offer in compromise. Greeley has moved to dismiss the claim against her in count II pursuant to Fed. R. Civ. P. 12(b)(6), alleging that the plaintiff may not properly maintain a Bivens action against her.

3

## Discussion

In determining whether to grant a Rule 12(b)(6) motion to dismiss, the court must accept all of the factual averments contained in the complaint as true and draw every reasonable inference in favor of the plaintiffs. See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992). Great specificity is not required to survive a Rule 12(b)(6) motion. "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts from which the defendant will be able to frame a responsive pleading.'" Garita, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)). In so doing, however, plaintiff cannot rely on "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir.) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)). In the end, the court may grant a motion to dismiss "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

26 U.S.C. § 7433 allows taxpayers to bring a civil action for damages resulting from certain unauthorized actions taken to collect taxes. See 26 U.S.C.A. § 7433 (West Supp. 1997). It states, in part, the following:

4

If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

Id. § 7433(a).[2] The provision, originally passed in 1988 as part of the Omnibus Taxpayer Bill of Rights, Pub. L. 100-647, 102 Stat. 3730, was amended in 1996 as part of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452. Among other things, the amendment raised the statutory cap on damages from $100,000 to $1,000,000. See 26 U.S.C.A. § 7433(b) (West 1989 & Supp. 1997). It did not, however, alter the standard of liability expressed in the statute. See id. § 7433(a). Both provisions were passed by Congress to provide remedies for taxpayers "against an overzealous officialdom." See McMillen v. United States Dep't of Treasury, 960 F.2d 187, 190 (1st Cir. 1991) (quoting Cameron v. IRS, 773 F.2d 126, 129 (7th Cir. 1985)).

In Bivens, the Supreme Court held that under some circumstances an individual may bring an action for damages against a federal official who violates the individual's constitutional rights. See 403 U.S. at 389. Since that

_____

[2]26 U.S.C. § 7432, which deals with civil damages for failure to release liens, is inapplicable to this case.

5

decision, the Supreme Court has indicated that an individual will not be able to pursue a <u>Bivens</u> remedy in certain situations. No <u>Bivens</u> remedy will be implied where Congress has "expressly precluded the creation of such a remedy by declaring that existing statutes provide the exclusive mode of redress." <u>Bush v. Lucas</u>, 462 U.S. 367, 373 (1983). Neither will courts create a <u>Bivens</u> remedy when "special factors counselling hesitation are present." <u>Chappell v. Wallace</u>, 462 U.S. 296, 298 (1983) (internal quotation omitted). One such special factor exists "when the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423 (1988).

In <u>Schweiker</u>, the Supreme Court discussed <u>Bivens</u> and its progeny, concluding as follows:

> In sum, the concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional <u>Bivens</u> remedies.

<u>Id.</u> To preclude the creation of a <u>Bivens</u> action, the remedial mechanisms need not provide a remedy for the precise harm

suffered. Id. at 425. As the Court noted in Schweiker when it declined to create a Bivens action for individuals who had their Social Security benefits wrongfully terminated,

> Congress has failed to provide for "complete relief": respondents have not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits. The creation of a Bivens remedy would obviously offer the prospect of relief for injuries that must now go unredressed. Congress, however, has not failed to provide meaningful safeguards or remedies for the rights of persons situated as respondents were.

Id.

Circuit courts have expressed doubt that a Bivens remedy should be created for the alleged deprivation of constitutional rights occurring during the collection of federal taxes. See McMillen, 960 F.2d at 190 ("Even if the [tax collection] behavior described in the complaint did constitute some sort of constitutional violation, moreover, we doubt that the creation of a Bivens remedy would be an appropriate response."); Cameron, 773 F.2d 126, 129 (1985) ("Congress has given taxpayers all sorts of rights against an overzealous officialdom . . . and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees. It is hard enough to collect taxes as it is; additional obstructions are not needed."); but see Rutherford v. United States, 702 F.2d 580, 584-85 (5th Cir. 1983) (suggesting that where a complaint "sketches a portrait of a

7

lawless and arbitrary vendetta fueled by the power of the state, designed to harass by unwarranted intrusion into the minutia of [the plaintiffs] financial affairs, and intended to abuse by the creation of palpably unfounded claims against their property which they can set to right only by unnecessary litigation," a Bivens action might be appropriate).  In McMillen, the First Circuit considered a claim against IRS employees similar to this case.  See 960 F.2d at 190.  After finding that the conduct complained of did not rise to the level of a constitutional violation, the court noted that the statutory scheme of the Internal Revenue Code ("IRC") provides a wide array of remedies for abuses by IRS employees:

> Today these rights include, in addition to the right to sue for a tax refund under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422, and the ability to contest the validity of tax liens under 28 U.S.C. § 2410, the remedies enacted in the "Taxpayer Bill of Rights." When they are deployed in their proper time and place . . . these remedies enable an aggrieved taxpayer to recover damages for the sorts of abuses alleged here: the wrongful failure to release tax liens, 26 U.S.C. § 7432, and the reckless or intentional violation of any provision of the tax laws "in connection with any collection of Federal tax . . . ." Congress has deemed Sections 7432 and 7433 the exclusive remedies for damages resulting from such abuses.
>
> The remedies Congress has created may not be perfectly comprehensive, but they do supply "meaningful safeguards or remedies for the rights of persons situated" as the [plaintiffs] were and establish "that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the [administration of the tax laws.]"  In such cases, the courts have declined to create new

8

<u>Bivens</u> remedies.
<u>Id.</u> (internal quotations and citations omitted).  Furthermore, at least one district court has held that Congress expressly precluded the creation of a <u>Bivens</u> remedy for unlawful tax collection practices by providing that a civil action pursuant to § 7433 would be the exclusive remedy for recovering damages.  <u>See</u> <u>Brown v. Johnson</u>, 889 F. Supp. 355, 358 (W.D. Ark. 1995).

Greeley asserts that the plaintiff may not properly bring a <u>Bivens</u> action against her as an individual because the detailed remedial scheme provided in the IRC indicates Congress' intent not to allow such a remedy.  The plaintiff, on the other hand, attempts to distinguish this case from prior tax collection cases by characterizing Greeley's actions as conduct that "falls well beyond the scope of the [IRC's] remedial scheme."  <u>See</u> Pl.'s Mem. of Law in Supp. of Obj. to Mot. to Dismiss, at 3.[3]  She attempts

---

[3]The plaintiff alleges that in addition to unlawful collection activity, Greeley:  (1) lied to the Barrons; (2) altered standard IRS documents in order to obtain an otherwise improper levy; (3) engaged in aggressive collection activity while the Barron's offer in compromise was pending and on appeal; (4) failed to notify the Barrons that their proposed settlement offer was only $2610.00 less than the amount determined by Greeley to be appropriate while she continued to engage in aggressive collection activity; (5) delayed resolution of the Barron file while citing erroneous legal and factual bases for doing so despite the protests of the Barrons; and (6) continued all of the above despite having been informed that Bruce Barron was suicidal as a result of her actions.  The plaintiff contends that these actions demonstrate an ongoing pattern of oppressive conduct designed not to collect taxes, but to "intimidate and harass" the Barrons.  Pl.'s Mem. of Law in Supp. of Obj. to Mot.

9

to draw support for this position from <u>Rutherford v. United States</u>, 702 F.2d 580, 583-85 (5th Cir. 1983).  In <u>Rutherford</u>, the Fifth Circuit suggested that a <u>Bivens</u> remedy might be appropriate for certain egregious conduct not redressed by the IRC's remedial scheme.  <u>See</u> <u>id.</u>  <u>Rutherford</u>, however, was decided not only before the Supreme Court's decision in <u>Schweiker</u>, but also before the passage of both the Omnibus Taxpayer Bill of Rights in 1988 and the Taxpayer Bill of Rights 2 in 1996.  These provisions expand the IRC's remedial scheme to include conduct similar to if not identical with that complained of by the plaintiff.  <u>See</u> <u>Schweiker</u>, 487 U.S. at 428 ("In light of the complex statutory schemes involved, the harm resulting from the alleged constitutional violation can in neither case be separated from the harm resulting from the denial of the statutory right.").  Even if, as the plaintiff has alleged, Greeley's alleged constitutional violations go beyond the scope of the remedial scheme, the comprehensiveness of the scheme suggests that Congress intended it to be exclusive.  <u>See</u> <u>Schweiker</u>, 487 U.S. at 423.

The court notes that Greeley's alleged actions, <u>see</u> <u>supra</u> note 3, if true, cannot be justified or condoned when viewed in the light of reasonable standards of behavior with which tax-

_____

to Dismiss, at 4.

payers expect revenue officers to comply when performing those duties entrusted to them.  However, the plaintiff has offered, and the court can discern, no further legal justification for creating a <u>Bivens</u> remedy against the individual revenue officer in this case given the current state of the applicable statutory and decisional law.  Therefore, the court holds that the plaintiff may not maintain a <u>Bivens</u> action against Greeley.[4]

Conclusion

For the reasons stated above, Greeley's motion to dismiss the claims against her in count II(document no. 6) is granted.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 18, 1998

cc:  William E. Brennan, Esquire
     John V. Cardone, Esquire

---

[4]Because of the court's determination that Greeley is not a proper defendant in this action, it need not consider her argument that the case against her should be dismissed because she was not properly served.

11