**Rafael O. MORELL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. Civ. 98–1033(DRD).

United States District Court, D. Puerto Rico.

March 27, 2000.

Francisco Fernandez–Alvarez, Hato Rey, PR, for plaintiff.

Beatriz T. Saiz, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiff Rafael Morell and former Co-plaintiff Mabel Campos filed the instant complaint on January 23, 1998, seeking compensation for damages allegedly caused by the Internal Revenue Service founded on violations to several sections of the Internal Revenue Code. (Docket No. 1). Plaintiff subsequently filed a First Amended Complaint on June 30, 1998 (Docket No. 11), and a Second Amended Complaint on January 19, 1999 (Docket No. 22). Co-plaintiff Mabel Campos filed a voluntary motion to dismiss her Claim on April 23, 1999 (Docket No. 34), which motion was granted by the Court on May 6, 1999 (Docket No. 35).

In essence, Plaintiff's Second Amendment Complaint seeks damages for unauthorized disclosure of return information, 26 U.S.C. § 7431; for reckless and intentional failure to release liens, 26 U.S.C. § 7432; and for reckless and intentional unlawful collection activities, 26 U.S.C. § 7433. First, through his section 7433 claim, Plaintiff alleges that Defendant's officer, Agent Norberto Ruiz, recklessly, intentionally, and deliberately engaged in unauthorized collection activities without complying with the statutory requirement of Notice and Demand of 26 U.S.C. § 6303(a) and based on assessments made after the three (3) year statute of limitations of 26 U.S.C. § 6501. Second, under his section 7432 cause of action, Plaintiff

alleges that Defendant executed a lien without complying with the statutorily required Notice and Demand and then failed to release the lien despite repeated attempts by Plaintiff placing Defendant on notice of the violation. And third, under his section 7431 cause of action, Plaintiff alleges that by letter dated February 16, 1996. Agent Ruiz knowingly and intentionally disregarded Internal Revenue Code rules when he disclosed to a private party Plaintiff's tax information without prior thereto obtaining his consent. Finally, Plaintiff avers that Defendant issued and executed thirty-two (32) levies without the "Notice of Intent to Levy" required by 26 U.S.C. § 6331(d), thereby engaging in further violations of the prohibition against unauthorized disclosures.

Both Defendant and Plaintiff have filed Motions for Summary Judgment. (Docket Nos. 38 & 39). On the one hand, Plaintiff argues that summary judgment should be entered as to his causes of action under sections 7431 and 7433 because there are no genuine issues as to material facts. On the other hand, Defendant argues that all of Plaintiff's claims are time barred; Plaintiff's section 7432 cause of action is barred for failure to exhaust administrative remedies; and Plaintiff's section 7433 cause of action fails to state a claim. Further, Defendant questions Plaintiff's statement of uncontested facts, including his allegation that the IRS failed to issue a Notice and Demand letter prior to issuing the thirty two (32) levies.

## I. Standards for motion for summary judgment

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodriguez v. P.R.T.C.*, 110 F.3d 174, 178 (1st Cir.1997). Accordingly, federal courts will grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). *See also Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997) (summary judgment will be denied where there is a "a trial worthy issue as to some material facts.") A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Garside v. Osco Drug Inc.,* 895 F.2d 46, 48 (1st Cir.1990). "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry,* 111 F.3d at 187. Nonetheless, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

The movant for summary judgment, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." *Vega–Rodriguez,* 110 F.3d at 178. Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment." *Cortes–Irizarry,* 111 F.3d at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood ..." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987).

"We believe that summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be

appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *cf. Pullman–Standard v. Swint*, 456 U.S. 273, 288–90, 102 S.Ct. 1781, 1790–1791, 72 L.Ed.2d 66 (1982) (discriminatory intent is a factual matter for the trier of fact); *see also William Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir.1995); *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 107 (1st Cir. 1988); *Lipsett v. University of P.R.*, 864 F.2d at 895. "Under such circumstances, jury judgments about credibility are typically thought to be of special importance." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

When adjudicating a motion for summary judgment the facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

## II. Application of standards

■ At the outset, the Court denies Plaintiff's request for summary judgment on his Section 7433 cause of action for unlawful collection activities.[1] Plaintiff's claim is fraught with issues of motive and intent requires determinations of credibility not susceptible to disposition via summary judgment.[2] (Docket No. 39). For example, Plaintiff's motion advances that agent Ruiz "**intentionally and fraudulently** blacked out the words . . . in an effort to conceal his illegal activities," Docket 39 at pg. 6; "IRS continued to engage in unlawful collection activities **knowing full well** that such collections were illegal," Docket No. 39 at pg. 12; "Defendant **recklessly or intentionally** disregarded the provisions of Code Section 6303;" Docket No. 39 at pg. 12; and "Defendants **recklessly or intentionally** disregarded the provisions of Code Section 6331(d)," Docket No. 39 at 14. (Emphasis added). Clearly, all of these allegations require the Court to examine Defendant's mental state and summary judgment is not a proper mechanism to dispose of matters involving motive and intent. *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir.2000).

Plaintiff's request for summary judgment on his Section 7431 claim for unauthorized disclosure of return information warrants more detailed analysis and is discussed below in conjunction with the Court's disposition of Defendant's Motion for Summary Judgment.

## A. Claim for unauthorized disclosure of return information—26 U.S.C. § 7431

Plaintiff's cause of action under section 7431 of the Internal Revenue Code is

1. Section 7433(a) reads as follows:

 **In general.**—If, in connection with any collection of Federal tax with respect to a taxpayer, any office or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages

2. Summary judgment based on factual issues involving motive and intent is to be sparingly granted. *Oliver v. Digital Equipment Corp.*, 846 F.2d at 107; *Coll v. PB Diagnostic Systems*, 50 F.3d at 1121; *Lipsett v. University of Puerto Rico*, 864 F.2d at 895; *Poller v. Columbia Broadcasting System*, 368 U.S. at 473, 82 S.Ct. at 491.

based on two separate incidents of alleged unauthorized disclosures of return information. First, Plaintiff alleges that on February 16, 1996, Defendant gave Ms. María Alejandro Quiñones, a private citizen who had brought an unrelated claim against Morell, a letter disclosing important tax information of taxpayer Morell without taxpayer Morell's consent. Second, Plaintiff alleges that Defendant issued and executed against Plaintiff Morell thirty two (32) levies without the prior "Notice of Intent to Levy" required by section 6331(d)(4)(2). Under section 6331(d)(2) and *Schrambling Accountancy Corp. v. U.S.*, 689 F.Supp. 1001 (N.Cal.1988), said disclosures were unauthorized and, thus, entitle Plaintiff to compensation of damages.

Defendant responds to Plaintiff's claims with a motion for summary judgment wherein the Government avers, first, that Plaintiff's claim based on the letter issued on February 16, 1996, is time barred because the claim was not timely raised within two years after Plaintiff had discovered the disclosure. See 26 U.S.C. § 7431(d).[3] Specifically, Defendant states that Plaintiff knew of the disclosure on February 16, 1996. Notwithstanding, Plaintiff failed to raise a claim based on said disclosure until the First Amendment Complaint was filed on June 30, 1998. Accordingly, Defendant alleges, Plaintiff's claim on this basis must be dismissed. Defendant then argues that Plaintiff's claim for damages arising out of the disclosure of return information on levies must be dismissed because the disclosure was exceptionally authorized under 26 U.S.C. § 6103(k)(6) (disclosure for collection purposes).

## 1. Statute of limitations—February 16, 1996 letter

On June 30, 1998, Plaintiff filed an Amended Complaint (Docket No. 11) adding to his initial Complaint a cause of

action for unauthorized disclosure of return information under 26 U.S.C. § 7431. Said cause of action was based, exclusively, on Plaintiff's assertion that "On or about February 16, 1996, Plaintiff Morrell discovered that service agent Ruiz has engaged in unauthorized disclosure of return and return information to a third party, in violation of Code Section § 7431." Docket No. 11, ¶ 39. Then, on October 14, 1998, Plaintiff filed a Second Amended Complaint (Docket No. 22), again declaring that "On or about February 16, 1996, Plaintiff Morell discovered that service agent Ruiz had engaged in unauthorized disclosure of return and return information to a third party, in violation of Code Section 7431." Docket No. 22, ¶ 39. Further, on June 17, 1999, Plaintiff accompanied his Motion for Summary Judgment with a sworn declaration in which he stated: "On February 16, 1996, I received a copy of a communication from agent Ruiz at the IRS addressed to the Social Security Administration revealing confidential information involving my tax returns. Return information was also give to a Mrs. Alejandra regarding my tax accounts." Sworn Statement, ¶ 25. And finally, on April 26, 1999, Plaintiff filed an opposition to Defendant's motion for summary judgment in which he argued that "Plaintiff's Amended Complaints following his original Complaint filed on January 23, 1998, **all related back to the original date of the filing** of the action, and as such were subject to the limitation commencing from the original date of filing, not the subsequent dates of amendments." Docket No. 32, at pg. 6.

Based on the above, Defendant's motion for summary judgment argues that Plaintiff knew of the allegedly unauthorized disclosure of return information on February 16, 1996, and that, therefore, given the two year statute of limitations applicable to claims for unauthorized disclosure of return information, Plaintiff should have

---

**3.** Section 7431(d) states that "an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at any time within 2 years after the date of discovery by the plaintiff of the unauthorized disclosure."

filed his claim no later than February 16, 1998. Moreover, Defendant argues that Plaintiff's Amended Complaints do not relate back to the original filing because nothing in the original filing even suggests, let alone places the United States on notice, that Plaintiff has a cause of action for unauthorized disclosure of return information. Surprisingly, though, in response to Defendant's reply to Plaintiff's opposition to summary judgment, Plaintiff now advances that "Plaintiff had actual knowledge of Defendant's unlawful disclosures of return information for the first time on February 22, 1998, in the course of a discovery proceeding at the Puerto Rico Industrial Accident Board. [ . . . ] In his pleadings Plaintiff made a typographical error and mistakenly gave February 16, 1996 as the date he first learned of the unlawful disclosures." Docket No. 41 Attachment.

 To begin with, the Court finds that Plaintiff's afterthought attempt to change the chronology of events that transpired with regards to the letter of February 16, 1996, is ineffective, unwarranted and futile. It is a well-settled principle that an interested witness cannot create a conflict of facts and resist summary judgment by submitting an affidavit that is clearly contradictory to a prior declaration but does not explain the reasons for the contradiction. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." (citations omitted)). Moreover, given the number of times that Plaintiff asserted that he knew of the disclosure on February 16, 1996, and the fact that Plaintiff argued that his Amended Complaints related back to the original filing and, thus, his claim for the letter was not time-barred even though he had waited more than two years to file that claim, Plaintiff's explanation that his mistake was due to a typographical error is unsatisfactory. *See Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3rd Cir.1988) (district court could disregard conflicting affidavit when no explanation was offered for contradictions and plaintiff's new statement was submitted after "she faced almost certain defeat in summary judgment" and after eight consistent prior sworn statements); *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2nd Cir.1993) ("a party may not, in order to defeat summary judgment, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony") citing *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2nd Cir.1991); *Hackman v. Valley Fair*, 932 F.2d 239 (3rd Cir.1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists. '[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit.' " (citations omitted)). As the old Latin adage declares: *Facta Potentiora sunt verbis*. (Facts are stronger than words). Accordingly, the Court finds that, as per Plaintiff's own repeated declarations, Plaintiff knew of the February 16, 1996, letter on February 16, 1996. It is that date that the Court will use to determine whether Plaintiff's claim based on that letter is time-barred.

Section 7431(a) of the Internal Revenue Code provides for a cause of action for damages against the United States where an officer or employee of the United States "knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103." Section 7431(d) states, however, that "Notwithstanding any other provision of law, an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at

any time within 2 years after the date of discovery by the plaintiff of the unauthorized disclosure."

▮ Given the Court's prior finding, there is no controversy that Plaintiff knew of the February 16, 1996, letter more than two years before he filed the Amended Complaint with a cause of action based on that letter's content. Further, although Plaintiff has argued that his Amended Complaints relate back to the date of his original filing, the Court disagrees.

While courts have generally allowed amendments that correct technical errors to relate back where such corrections do not set up a new claim for relief, this court has refused to allow an amendment to assert a claim which was not even suggested in the original complaint. *Tessier v. United States*, 269 F.2d 305, 308 (1st Cir.1959). This approach is consistent with the law as commonly stated:

[I]f the alteration of the original statement is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction or occurrence that forms the basis of the claim or defense, then the amendment will not relate back and will be time barred if the limitations period has expired.

6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1497 (2d ed.1990). *See also 3 Moore's Federal Practice*,

¶ 15.15[3] (1990) (*"[I]f the original pleading gives fair notice of the general fact situation out of which the claim or defense arises*, an amendment which merely makes more specific what has already been alleged ... will relate back even though the statute of limitations has run in the interim".) (Emphasis supplied).

*O'Loughlin v. National R.R. Passenger Corp.*, 928 F.2d 24, 26–27 (1st Cir.1991).[4] *See also Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1175 n. 7 (1st Cir. 1995); *Wilson v. U.S. Government*, 23 F.3d 559 (1st Cir.1994).

A reading of Plaintiff's Complaint and subsequent amendments reveals that Plaintiff's claim for the February 16, 1996, disclosure is in no way related nor does it arise out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Clearly, it was not until Plaintiff filed his First Amended Complaint on June 30, 1998, that Plaintiff for the first time mentioned any facts or claims related to the disclosure of February 16, 1996. Nothing in Plaintiff's first filing even suggests the existence of that claim. Further, although Plaintiff attempts to argue that all of his causes of action "continue to accrue as Defendant continues to recklessly and unlawfully disregard provisions of the Code," the First Circuit has rejected the "continuous tort" theory in the context of a section 7433 cause of action for unlawful collection ac-

---

4. Pursuant to Rule 15(c)(2) of the FEDERAL RULES OF CIVIL PROCEDURE, an amendment of a pleading relates back to the date of the original pleading when "(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ..." Hence, when a plaintiff attempts to allege an entirely different transaction by amendment, the amendment does not relate back. On the other hand, when a plaintiff merely attempts to correct a technical deficiency or expand or modify the facts already alleged, such that the plaintiff is simply restating the original claim with greater particularity or additional supporting facts,

the amendment does relate back. In the end, the decisive test is whether the original pleading and the amendment have a common core of operative facts, such that the original pleading gave the defendant adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim. If this test is met, the amendment will relate back to the date of the original filing. *See O'Loughlin*, 928 F.2d at 27–28 and cases cited therein. *See also Allied Intern. v. Intern. Longshoremen's Assoc.*, 814 F.2d 32, 36–37 (1st Cir. 1987); 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 1496 & 1497.

tivities. *Dziura v. U.S.*, 168 F.3d 581 (1st Cir.1999):

> "Continuing violation" jurisprudence is drawn from tort law. The doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it. *See Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir.1992); *cf. Gilbert v. City of Cambridge*, 932 F.2d 51, 58–59 (1st Cir.1991) (recognizing the vital distinction "between a continuing act and a singular act that brings continuing consequences in its wake"). Thus, absent a disability or other impediment to suit, the applicable limitation period ordinarily will begin to run when an injured party knows or should know the critical facts related to his claim. *See United States v. Kubrick*, 444 U.S. 111, 122–24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Rodriguez v. Banco Central*, 917 F.2d 664, 665–66 (1st Cir.1990); *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 995 (1st Cir.1988). The implementing regulations suggest that this general rule also applies to cases under section 7433(a). See 26 C.F.R. § 301.7433–1(g)(2) (stipulating that a cause of action brought under section 7433(a) "accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action").

*Id.* at 583. (Footnotes omitted). Hence, Plaintiff's claim for unauthorized disclosure of return information based on the February 16, 1996, letter is **DISMISSED** as time-barred.

### 2. Authorized disclosure—levies

To prevail in a claim for unauthorized disclosure under section 7431, a plaintiff must show that an officer or employee of the United States, knowingly or negligently disclosed returns or return information in violation of any provision of 26 U.S.C. § 6103. Section 6103 provides that all tax return information is confidential and may not be disclosed except as authorized by the Internal Revenue Code. Subsection 6103(k)(6), in turn, creates an exception to the general rule and authorizes disclosure "to the extent disclosure is necessary in obtaining correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of" the Internal Revenue Code. Included within this exception is an authorization for the IRS to disclose confidential taxpayer information during collection activities such as when the IRS imposes a lien on property or enforces a levy. *See* 26 U.S.C. § 6331. Finally, Section 7431(b) provides an exemption to liability from disclosures resulting from "a good faith, but erroneous interpretation of 6103."

Here, Plaintiff is seeking liability for unauthorized disclosures made in connection to thirty two (32) notices of levy. Plaintiff acknowledges that Revenue officers are authorized to disclose return information in notices of levy, but argues nonetheless that Defendant is liable for the disclosures because the notices of levy were issued without previously issuing the required Notice of Intent to Levy. *See* 26 U.S.C. § 6331(d)(2). Thus, the question before the Court is whether the aforementioned exception to the general prohibition to disclose includes disclosures made in connection with allegedly invalid collection activities.

■ On the question of liability for disclosure during collection activities, there are varying interpretations on whether the lawfulness of a disclosure of returns or return information is or is not dependent upon the validity of the underlying collection activity. *See* Robert P. Butts, IRS Liability For Wrongful Disclosures Made in the Process of Tax Collection: should the validity of the underlying collection activity be considered?, 102 Dick.L.Rev. 67 (1997) (discussing "relevant" and "irrelevant" theories of liability for disclosure of

return information).[5] Notwithstanding, a careful reading of the relevant case law leads this Court to conclude that the answer to this question is provided by the nature of the Internal Revenue Code's remedial structure. Pursuant to said structure, the Court finds that a taxpayer may not use section 7431 to challenge the underlying merits of an assessment, but can use section 7431 to challenge the procedures leading to collection activities in which confidential information is disclosed. The Court explains.

**"Pay first and litigate later" rule.**

28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 together authorize a taxpayer to sue the IRS where the taxpayer believes that the IRS has incorrectly assessed a tax liability. In such cases, however, before the taxpayer resorts to a judicial suit, the taxpayer must file an administrative claim for a refund and then, if the refund is denied, pay the assessment. Failure to comply with this refund procedure has already been held in this Circuit to preclude the taxpayer from maintaining a claim against the government under the guise of a non-refund action, whether that claim is one to quiet title under 28 U.S.C. § 2410(a) or for failure to release tax liens under 26 U.S.C. § 7432, so long as the claim is based on an allegedly unlawful assessment. *McMillen v. U.S Dept. of Treasury*, 960 F.2d 187, 189–190 (1st Cir.1991). As the First Circuit stated, "[t]his is because the 'pay first and litigate later' rule is applicable both to refund actions and to any non-refund action that the taxpayer attempts to use as a vehicle for a collateral attack on his tax assessment." *Id.* at 189. (Citations omitted). Accordingly, where a cause of action to quiet title or for failure to release liens is based on an allegedly unlawful tax assessment, a taxpayer must first exhaust the administrative remedies for a refund. However, where the cause of action simply contests the procedural validity of a lien, the taxpayer has already paid the assessment, or the taxpayer contends that some extrinsic event has rendered the lien unenforceable, the taxpayer may proceed to court with his or her section 2410(a) or section 7432 claim without having to exhaust the administrative procedure for a refund. *Id.* at 189.

 Under the same analysis, the Court concludes that failure to comply with the refund procedure precludes a taxpayer from maintaining a cause of action for unauthorized disclosure of returns or return information under 26 U.S.C. § 7431, but only when the cause of action contests the validity of the underlying tax assessment. As with section 7432, section 7431 does not expressly incorporate the "pay first and litigate later" rule. Notwithstanding, "the new statute must be read and applied in light of the rule if it is to square with the tax collection and refund procedures already established by

---

5. *See also Elias v. U.S.*, 1990 WL 264722 at *5 (D.C.Cal.1990) (validity of underlying lien or levy is wholly irrelevant to disclosure issue); *Wilkerson v. U.S.*, 67 F.3d 112 (5th Cir.1995) (validity of underlying collection activity is irrelevant); *Venen v. U.S.*, 38 F.3d 100 (3rd Cir.1994) (lawfulness of levies irrelevant); *Tomlinson v. U.S.*, 1991 WL 338328 (W.D.Wash.1991) (validity of lien irrelevant), aff'd. 977 F.2d 591 (9th Cir.1992); *Chisum v. U.S.*, 1994 WL 19020 (D.Ariz.1993); *Bleavins v. U.S.*, 807 F.Supp. 487, 489 (C.D.Ill.1992) (" § 7431 does not apply to disputed merits of an assessment"), aff'd. 998 F.2d 1016 (7th Cir.1993); *Gille v. U.S.*, 838 F.Supp. 521 (N.D.Okla.1993) (IRS's failure to comply with notification procedures entitled taxpayer to damages for unauthorized disclosure) *rev'd* because notices were sent 33 F.3d 46 (10th Cir.1994); *Husby v. U.S.*, 672 F.Supp. 442 (N.D.Cal.1987) (exception to liability for disclosure inapplicable where assessment was not made); *Maisano v. U.S.*, 908 F.2d 408 (9th Cir.1990) (validity of underlying tax liens and levies relevant to finding authorized disclosure); *Schrambling Accountancy Corp. v. U.S.*, 689 F.Supp. 1001, 1006 (N.D.Cal.1988) (improper notice of levy is basis for liability), *rev'd on other grounds* 937 F.2d 1485 (9th Cir.1991) (reversing because information already public record and therefore not protected by § 6103), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992); *Rorex v. Traynor*, 771 F.2d 383 (8th Cir.1985) (levy unlawful where taxpayer had complied with installment agreement).

Congress. An interpretation that ignored the 'pay first and litigate later' principle would invite taxpayers to circumvent the refund action process by litigating the merits of the assessments against them in the collateral setting of a suit for damages allegedly caused by the IRS' refusal to release liens on their property [or by the IRS' disclosure of return information]." *Id.* at 190. Where the taxpayer is simply contesting the procedural validity of a disclosure, has already paid the underlying assessment, or contends that some extrinsic event has rendered the disclosure unauthorized, however, the taxpayer need not first resort to the administrative refund procedure.[6]

■ In the instant case, Plaintiff bases his section 7431 claim on the lack of validity of the underlying assessments which led to the issuance of levies, as well on the IRS' failure to send him a Notice of Intent to Levy prior to issuing the thirty two (32) levies against him.[7] Hence, Plaintiff's claim questions both the validity of the underlying assessments and the procedure leading to the issuance of levies. For the reasons stated above, the Court holds that Plaintiff's claim for damages arising out of the disclosure of information in levies which were allegedly based on invalid assessments may not be raised through a section 7431 cause of action. This claim, therefore, is **DISMISSED**. Notwithstanding, Plaintiff's claim for damages arising out of the disclosure of information in levies issued without a prior Notice of Intent to Levy can be raised through a section 7431 cause of action. Still, because there is a controversy of fact as to whether or not the IRS issued the required Notice of Intent to Levy,[8] the Court is precluded from entering summary judgment on this aspect of Plaintiff's claim. Therefore, on this issue Defendant's motion for summary judgment is **DENIED.**

### B. Claim for failure to release lien— 26 U.S.C. § 7432

Defendant's motion for summary judgment advances that Plaintiff's cause of action for failure to release liens is barred by the applicable two year statute of limitations because Plaintiff's cause of action accrued, at the latest, on July 25, 1995. Notwithstanding, Plaintiff filed his Complaint on January 16, 1998. Plaintiff does not oppose Defendant's argument nor the facts on which Defendant's argument is based. Moreover, although Plaintiff does attempt through his own motion for summary judgment to argue that his causes of action continue to accrue as the IRS continues to violate the Internal Revenue Code, the First Circuit has rejected that theory. *Dziura,* 168 F.3d 581. Accordingly, Plaintiff's cause of action for failure to release liens is **DISMISSED** as time-barred.

### C. Claims for unauthorized collection activities—26 U.S.C. § 7433

Plaintiff's claim for unauthorized collection activity is based on multiple events wherein the IRS allegedly violated Internal Revenue Code provisions either intentionally or recklessly. First, Plaintiff claims that the IRS' collection efforts col-

---

6. In support of this conclusion, see *Coplin and Assoc., Inc. v. U.S.,* 814 F.Supp. 643 (W.D.Mi.1992) (taxpayer may not use section 7431 to challenge the underlying merits of the assessment); *Bleavins v. U.S.,* 807 F.Supp. 487 (C.D.Ill.1992) (section 7431 does not apply to disputed merits of an assessment).

7. When issuing a levy under section 6331, the IRS is required to provide the taxpayer with a demand for payment and notification ten (10) days prior to the levy. 26 U.S.C. § 6331(d)(2).

8. Throughout the record, Plaintiff repeatedly states that he never received Notice of Intent to Levy or Notice and Demand letters placing him on notice of the ensuing levies. Defendant responds and makes reference to a sworn statement that the IRS did issue notice and demand letters and final notice of intent to levy letters for all periods between 3/83 and 12/85. Docket 38, Statement of Contested Facts ¶ 6.

lection efforts against Plaintiff were based on tax assessments which were made past the expiration of the three (3) year statute limitations contained in 26 U.S.C. § 6501(a)(1) and that, despite Plaintiff's efforts to alert the IRS to this illegality, the IRS continued its collection activities, supposedly because the IRS did not need an assessment for collection activities under 26 U.S.C. § 6020(b). *See* Docket No. 39, Exhibit L (as per this document, all but two (2) assessments were performed more than three years after the tax period ended), Exhibit J (letter from Ruiz stating that sections 6203 and 6501 are inapplicable to Morell's case). Second, Plaintiff claims that, aside from engaging in collection activities without valid tax assessments, the IRS began collection activities in July 24, 1989, without previously issuing a notice and demand letter as required by 26 U.S.C. § 6303. As part of these activities, numerous levies were issued between March 15, 1995, and October 32, 1997. Docket No. 39, Exhibit P (Notices of Levy). Third, Plaintiff alleges that Agent Ruiz fraudulently falsified or altered IRS documents. As per Plaintiff's factual account, Agent Ruiz mailed notices of continuous levies to third party insurance companies where the notices of levies should not have been continuous. Then, allegedly with an intention to defraud and conceal his illegal activities, Agent Ruiz deleted the word "continuous" on the copies sent to Plaintiff. Docket No. 39, Exhibit K. Plaintiff argues that sending notices of continuous levies was in violation of the Internal Revenue Code regulations and that Agent Ruiz was clearly aware of that, given his multi-year of experience as an IRS officer. And fourth, Plaintiff asserts that Plaintiff filed and was granted a Claim for Refund and Abatement of Taxes for the years 1989 and 1990 but that notwithstanding, the IRS later issued and executed levies against Plaintiff for these tax years. *See* Docket No. 39, Exhibits N and O.

In response, Defendant argues that both of Plaintiff's causes of action based on the issuance of unlawful levies is time-barred. By letter dated July 20, 1995, Plaintiff admitted that on May 9, 1995, he knew of the levies and yet Plaintiff did not file his complaint until almost three (3) later. *See* Docket No. 39, Exhibit D. Because section 7433 has a two (2) year statute of limitations, Plaintiff's claim for said levies is time-barred.

Defendant then argues that Plaintiff has failed to state an actionable claim under section 7433. Plaintiff's claim is based on the absence of a valid assessment and failure to issue notices of levy. The law is established, however, that assessments cannot be challenged by filing section 7432 or 7433 actions. Rather, section 7433 exists only to challenge the methods by which the IRS engages in collection activities and acquires assets. Further, Defendants have attached to their motion a sworn statement that notices were issued, Manrique Sworn Declaration, and has accompanied its motion with copies of the assessments. Docket No. 38, Exhibits 1, 2 & 3. Said Certificates are presumptive proof that an assessment has been made and that requisite notices and demands for payment have been issued. Moreover, Defendant asserts that Plaintiff did not file most tax returns for the periods at issue; instead, the IRS issued substitute returns pursuant to section 6020(b). Thus, the assessments were timely made and the required notices were issued.

Finally, Defendant argues that Agent Ruiz did not fraudulently alter IRS documents or attempt to conceal the fact that unwarranted continuous levies were issued notwithstanding that they should not have been issued. Attached to Defendant's motion is a sworn statement in which Agent Ruiz explains the circumstances of the change in the IRS documents.

Plaintiff then responds to Defendant's motion for summary judgment questioning a number of facts asserted by Defendant in its motion.

### 1. Validity of assessments

■ Defendant correctly points out that Plaintiff may not challenge the validity of collection activities based on allegedly wrongful assessments. In *Gonsalves v. I.R.S.*, 975 F.2d 13, 16 (1st Cir.1992), the First Circuit specifically addressed this issue. The Court declared:

Mr. Gonsalves' claim for damages resulting from the government's refusal to give him a tax refund runs afoul of the clause in Section 7433 which says that a taxpayer may sue only if an IRS agent disregards a statute or regulation 'in connection with any *collection* of Federal tax.' The essence of Mr. Gonsalves' claim is that the government violated the tax laws by refusing to give him a refund because he was exempt from paying taxes during the years in question. In order to prevail on this claim, Mr. Gonsalves would have to prove that the IRS incorrectly *determined* the amount of his tax liability.

The legislative history of Section 7433 tells us that 'an action under this provision may not be based on alleged ... disregard in connection with the determination of tax." Conf.Rep. No. 1104, 100th Cong., 2d Sess., at 229, *reprinted* in 1988–3 Internal Revenue Cum.Bull. 473, 719. Taxpayers who wish to challenge the IRS' calculation of their tax liability must file either a petition for redetermination in the Tax Court, 26 U.S.C. §§ 6213, 6214, or a refund action in the district court. 26 U.S.C. § 7422. Section 7433 was not intended to supplement or supersede, or to allow taxpayers to circumvent, these procedures. *Cf. McMillen v. United States Department of Treasury*, 960 F.2d 187, 190 (1st Cir. 1991) (per curiam) (Section 7432 does not authorize taxpayers to circumvent refund action process by litigating merits of assessment in suit for damages allegedly caused by IRS' refusal to release liens on taxpayers' property).

*Id.* at 16. (Emphasis in original) (footnote omitted).

Accordingly, Plaintiff's cause of action under section 7433 is **DISMISSED** to the extent that Plaintiff challenges the IRS's assessments.

### 2. Statute of limitations

Section 7433(d)(3) specifically states that "an action to enforce liability ... may be brought only within 2 years after the date the right of action accrues." Moreover, Plaintiff specifically stated in his July 20, 1995, letter that on May 9, 1995, he received copies of Notices of Levy sent to a number of corporations. Docket 39, Exhibit D. Plaintiff brought suit against the IRS on January 23, 1998, more than two years after he had received copy of said notices of levy. Accordingly, Plaintiff's claim for the issuance of these levies is barred by the statute of limitations and is, therefore, **DISMISSED.**

Notwithstanding, Plaintiff's claim for the issuance of levies includes levies that were noticed after the July 20, 1995, letter. Specifically, Plaintiff's motion for summary judgment concerns twenty (20) levies that were issued within the two year period prior to the filing of the Complaint. Docket 39, Exhibit P. Plaintiff's claim on these levies, therefore, is not barred by the statute of limitations. Defendant's motion for summary judgment on these claims is **DENIED.**

### 3. Controversies of facts, issues of credibility, and/or issues of motive and intent

■ After examining the record in this case, the Court concludes that the existence of genuine issues of material facts requires **DENIAL** of the remaining arguments for summary judgment. First, there is a controversy as to whether or not Plaintiff filed tax returns for the years 1983, 1984 and 1985 and whether or not Plaintiff signed waivers which extended the statute of limitations for assessments. *See* Docket 32, Exhibit II and III; Docket 39, Exhibits I; and Docket No. 38, Man-

rique Sworn Declaration. These controversies are fundamental and their resolution is necessary to determine whether the requirements of 26 U.S.C. § 6203 and the three (3) year statute of limitations of 26 U.S.C. § 6501 apply and were met with regards to Plaintiff's claims. Further, the controversy as to the filing of income tax returns and as to waivers signed by Plaintiff must be resolved to determine whether the IRS issued notices within the statutorily prescribed period.

Second, there is a factual controversy as to whether or not the IRS issued Notices of Intent to Levy before commencing collection activities. Plaintiff has stated over and over again throughout the pleadings that Defendant never sent those notices; nevertheless, Agent Ruiz has stated that he did. *See* Docket 39, Exhibit D; and Docket 38, Ruiz Declaration. Plaintiff, of course, moves the Court not to grant credibility to Agent Ruiz's statement. The Court, however, cannot use the summary judgment stage to make any credibility determinations. *Greenburg*, 835 F.2d at 936. Thus, the controversy remains, leaving the Court unable at summary judgment stage to determine whether or not Defendant met the requirements for issuing notices of levy.

█ Third, whether or not Agent Ruiz acted fraudulently by issuing unwarranted continuous levies notwithstanding that they should not have been issued or by deleting words when he sent Plaintiff the copies of the notices is an issue of intent that cannot be resolved by way of summary judgment, particularly where Agent Ruiz has denied said intent. *See Poller*, 368 U.S. at 473, 82 S.Ct. at 491. *Cf. Pullman–Standard*, 456 U.S. at 288–90, 102 S.Ct. at 1790–1791; *William Coll*, 50 F.3d at 1121; *Oliver*, 846 F.2d at 107; *Lipsett*, 864 F.2d at 895; *Stepanischen*, 722 F.2d at 928. Docket 38, Ruiz Declaration.

### III. Conclusion

For the reasons stated above, the Court reaches the following determinations:

—Plaintiff's motion for summary judgment on his section 7433 claim is denied because of issues of motive and intent;

—Plaintiff's section 7431 claim based on the February 16, 1996, letter is dismissed on statute of limitations grounds;

—Plaintiff's section 7431 claim is dismissed to the extent that it is based on the issuance of notices of levies without proper assessments but not to the extent that it is based on the issuance of notices of levy without previously issuing of notices of intent to levy;

—Plaintiff's section 7432 claim is dismissed as time barred;

—Plaintiff's section 7433 claim for the issuance of levies is dismissed to the extent that the claim is based on the alleged invalidity of the IRS' assessments and as to all levies noticed prior to January 23, 1996, not as to those noticed after January 23, 1996;

—Defendant's motion for summary judgment on Plaintiff's remaining section 7433 claims is denied because of issues of motive and intent and the existence of controversies of facts.

Neither Defendant nor Plaintiff requested summary judgment on Plaintiff's claims for collection activities regarding the 1989 and 1990 tax debt. Accordingly, the Court leaves these claims untouched.

IT IS SO ORDERED.